# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MUCKROCK, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 14–cv-997 (KBJ) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Between July of 2013 and June of 2014, Plaintiff MuckRock LLC submitted a series of document requests to the Central Intelligence Agency ("CIA" or "Defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking a variety of records related primarily to the procedures that the CIA employs when it processes FOIA requests. (*See generally* Am. Compl., ECF No. 8.) MuckRock filed the instant lawsuit on June 10, 2014, after the CIA both missed the statutory deadline for issuing a final determination regarding certain document requests and refused to process others. (*See* Compl., ECF No. 1.) MuckRock's ten-count amended complaint primarily claims that the CIA improperly failed to respond to various requests for records, but MuckRock also takes aim at the CIA's purported "per se" policy of refusing to process *any* FOIA request for email records that does not contain four specific pieces of information. (*See* Am. Compl., ¶¶ 79–85.)

The CIA has now completed the processing of all but two of MuckRock's FOIA requests, and the parties have otherwise narrowed the issues in this case such that only

four of the counts in MuckRock's complaint (Counts 2, 4, 5, and 7) are presently disputed.[1] The disputes in these four counts implicate two searches, three documents, and the CIA's purported "per se" email policy.

Before this Court at present are the parties' cross-motions for partial summary judgment with respect to the remaining disputes. As far as Counts 2, 4, and 5 are concerned, the CIA asserts that it has conducted adequate searches for the records MuckRock has requested, and the agency also argues that it has properly withheld certain information pursuant to FOIA Exemption 3, which permits an agency to withhold responsive records that a statute specifically exempts from disclosure. (*See* Mem. in Supp. of Def.'s Mot. for Partial Summ. J. ("Def.'s MSJ Mem."), ECF No. 14, at 12.)[2] With respect to the alleged per se email policy, the CIA asserts that MuckRock lacks standing, that the issue is not ripe, and that MuckRock is seeking relief that is not available under the FOIA. (*Id.* at 39–47.) MuckRock contests these contentions (*see* Pl.'s Mem. in Opp'n to Def.'s Mot for Partial Summ. J. and in Supp. of Pl.'s Cross-Mot. for Partial Summ. J. ("Pl.'s xMSJ Mem."), ECF No. 22, at 11–14, 16–23, 27–32), and for the reasons explained below, this Court finds that both parties' cross-motions for summary judgment must be **GRANTED IN PART** and **DENIED IN PART**, as follows.

---

[1] Counts 2, 4, and 5 challenge the agency's response, or lack thereof, to MuckRock's requests for the following documents: records relating to the agency's processing of a particular prior FOIA request (Count 2) (*see* Compl., ¶¶ 21–29); a copy of an agency user manual and certain reference guides (Count 4) (*see id.* ¶¶ 41–53); and a copy of any objections that the CIA received from telecommunications providers regarding CIA data-gathering practices (Count 5) (*see id.* ¶¶ 54–70). Count 7 maintains that the CIA improperly enforces a per se policy of rejecting FOIA requests for email records that do not specify sender, recipient, subject and time frame. (*See id.* ¶¶ 79–85.)

[2] Page-number citations to the documents that the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

The Court finds that, with respect to Counts 2 and 4, the CIA has established that the agency conducted adequate searches for responsive records, and with respect to Counts 4 and 5, the CIA has properly invoked FOIA Exemption 3 and the National Security Act of 1947, 50 U.S.C. § 3024(i)(1) ("National Security Act"), to withhold, in whole or in part, the three responsive records that remain at issue. As a result, the CIA is entitled to summary judgment on Counts 2, 4, and 5. But MuckRock is entitled to summary judgment on the email-policy claims in Count 7. MuckRock has presented a ripe challenge to an alleged document-processing policy of the CIA that MuckRock has standing to pursue in order to seek a remedy that the FOIA authorizes, and because the record evidence leaves no doubt that the CIA does, in fact, employ an email-request policy that requires the agency to reject certain requests for identifiable records in a manner that contravenes the FOIA, MuckRock is entitled to declaratory relief. A separate order consistent with this Memorandum Opinion will follow.

## I. BACKGROUND[3]

### A. MuckRock's FOIA Requests And The CIA's Pre-Litigation Responses

MuckRock describes itself as a representative of the news media and claims that, "[t]hrough its imprint MuckRock News, MuckRock gathers information of potential public interest, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work free of charge to its audience[]" through its website. (Compl. ¶ 3.) MuckRock obtains some of the information that it processes through FOIA requests that it submits to various government agencies. To that end, between July of 2013, and June of 2014, MuckRock submitted a series of FOIA requests to the CIA seeking various

---

[3] The basic background facts are undisputed, unless otherwise noted.

agency records.  (*See generally id.*)  Four of the categories of records that MuckRock

sought during this time frame are relevant here and are described below, along with the

CIA's initial responses.

### 1.    Request No. F-2014-00381

On December 5, 2013, MuckRock submitted a FOIA request to the CIA asking

for "[a]ll information in [the CIA Automated Declassification Review Environment

('CADRE')] about the 110 records responsive to [MuckRock's prior FOIA request],

FOIA Request No. F-2010-00600[,]" other than those 110 records themselves.  (Compl.

¶¶ 23–24.)  CADRE is the CIA's "repository for documents reviewed under the

[agency's document] release programs"—such as its FOIA and Privacy Act document

releases—and the CADRE database also contains the administrative-processing files

that are associated with such requests for documents.  (Def.'s MSJ Mem. at 13 n.2.)  In

addition, CADRE is the computer application that the CIA's Information Management

Services ("IMS") uses to process documents when responding to FOIA requests and

conducting other information-access searches.  (*Id.*)

On February 18, 2014, the CIA informed MuckRock that it had accepted Request

No. F-2014-00381 for processing, and would waive the minimal processing fees

associated with this request.  (*See* Decl. of Martha Lutz ("Lutz Decl."), ECF No. 14-1–

14-4, ¶ 22.)  At the time that MuckRock filed its complaint in the instant case, the CIA

had not issued its final determination regarding this FOIA request.  (*See* Compl. ¶ 24.)

### 2.    Request No. F-2014-00753

In a letter to the CIA dated February 4, 2014, MuckRock requested "(1) [t]he

Classification Management Tools User Manual and (2) all Quick Reference Guides"

that CIA staff uses "to do classification and declassification review."  (Compl. ¶ 44–

45.)  On February 14, 2014, the CIA informed MuckRock that its request for the Manual was duplicative of another request that MuckRock had submitted (and the CIA had denied) in 2013, and that the agency would therefore not be processing that aspect of the request.  (*See* Lutz Decl. ¶ 34.)

Regarding the Quick Reference Guides, the CIA informed MuckRock that it was "processing a request for the same records from another requester ([MuckRock's] counsel), and that once processing of that request is complete, the Agency would forward [MuckRock] any releasable records[.]"  (*Id.*)  This processing was still ongoing when MuckRock filed the instant complaint.  (*See* Compl. ¶ 51.)

### 3.    Request Nos. F-2013-02200/F-2013-02572

On July 16, 2013, MuckRock submitted a FOIA request seeking a copy of "any objections to agency data gathering practices received by this agency from telecommunications and web service providers."  (Lutz Decl. ¶ 38.)  After the CIA informed MuckRock that this request was too broad for the agency to process, MuckRock submitted an amended request on November 4, 2013.  (*See id.* ¶¶ 39–40.)[4] The CIA deemed the amended request overly broad as well, and thereafter, apparently suggested various ways in which MuckRock could narrow its request.  (*See id.* ¶¶ 41–43.)  At the time that MuckRock initiated the instant lawsuit, the agency had not completed processing this FOIA request.  (*See id.*)

### 4.    Request No. F02014-00752 and Three Similar Requests

MuckRock submitted four separate FOIA requests on February 4, 2014; collectively, these requests sought "[a]ll email messages (and attachments) sent to the

---

[4]  The CIA assigned different request numbers to MuckRock's initial and amended requests.  For the sake of clarity, the instant decision treats them as a single FOIA request.

5

CIO-IMS-STAFF or CIO-IMS-ALL mailing lists by the Director or Deputy Director of

IMS" during four different time periods that correspond with the quarters of the 2013

fiscal year. (Compl. ¶ 73.)[5] The CIA allegedly declined to process these four requests

unless and until MuckRock provided additional information regarding the emails that

MuckRock was requesting. (*See id.* ¶ 75.) In this regard, the agency's response letter

stated:

> The FOIA requires requesters to 'reasonably describe' the
> information they seek so that professional employees familiar
> with the subject matter can locate responsive information with
> a reasonable amount of effort. *We require requesters seeking
> any form of 'electronic communications' such as emails, to
> provide the specific 'to' and 'from' recipients, time frame and
> subject.*

(*Id.* (emphasis added).)[6] MuckRock's complaint further alleges that the CIA did not

afford MuckRock any administrative appeal rights with respect to its refusal to process

the four requests for emails. (*See id.*)

## B.    Procedural History

MuckRock filed the initial nine-count complaint in the instant matter on June 10,

2014. (*See* Compl.) Eight of the counts pertain to the CIA's alleged failure to either

process or respond timely to MuckRock's FOIA requests, as noted above, and with

respect to those counts, the complaint requests that this Court order the CIA "to release

all requested records to MuckRock[.]" (Compl. at 20.) One count (Count 7) further

alleges that the CIA employs an illegal "per se test" when it responds to requests for

---

[5] The Court's Memorandum Opinion treats these four separate requests—which differ only with respect to the requested time frame—as a single FOIA request.

[6] Rather than issuing four identical letters, the CIA aggregated MuckRock's requests and responded to them in a single letter. (*See* Lutz Decl. ¶ 49 & n.15.)

emails, as evidenced by the agency's initial response to the four FOIA requests for emails that MuckRock had submitted.  (*See id.* ¶ 75; *see also id.* ¶¶ 80, 82.)

MuckRock amended its complaint on July 8, 2014, before the CIA had filed an answer.  (*See* Am. Compl.)  The sole difference between MuckRock's initial complaint and its amended complaint is the addition of Count 10, in which MuckRock challenged the agency's failure to respond to FOIA Request No. F-2014-01732, which requested a personal electronic copy of the CIA Records Search Tool ("CREST").  (*See* Am. Compl., ¶¶ 105–12; Def.'s MSJ Mem. at 18.)  CREST is a database that houses approximately 11.8 million pages of records that have been declassified under Executive Order No. 13256, 75 Fed. Reg. 707 (Dec. 29, 2009)—a Presidential mandate that requires federal agencies to declassify automatically any historical records of value that are otherwise nonexempt and are 25 years or older.  (*See* Def.'s MSJ Mem. at 12.)  In January of 2017, the CIA made the CREST database available to the public over the internet by posting the entire database on the agency's website.  (*See* Pl.'s Resp. to Def.'s Suppl. Br., ECF No. 39, at 1.)  *See also CREST: 25-Year Program Archive*, Central Intelligence Agency, https://www.cia.gov/library/readingroom/collection/crest-25-year-program-archive, which mooted the issue for the purpose of MuckRock's amended complaint.[7]

---

[7] To be specific, at the time that MuckRock filed the instant complaint, the CREST database was accessible to the public only via public workstations that are located at the National Archives and Records Center, which is in College Park, Maryland.  (*See* Def.'s MSJ Mem. at 13–14.)  After the CIA posted the database on its website, MuckRock stipulated that Count 10 "is now moot due to Defendant's publication of the CREST database in its [online] Electronic Reading Room." (Notice of Recent Development, ECF No. 42, at 1.)  Consequently, the Court has dismissed Count 10 of the Amended Complaint (*see* Minute Order of February 28, 2018), and the parties' summary-judgment arguments pertaining to that count will not be addressed in this Memorandum Opinion.

The CIA filed an answer to MuckRock's amended complaint on August 20, 2014 (*see* Answer to First Am. Compl., ECF No. 11), and subsequently reported that the agency was continuing to search for, and review, records with respect to two of MuckRock's FOIA requests.[8] The CIA also represented that it had completed processing and producing records with respect to six of MuckRock's FOIA requests, including MuckRock's request for certain emails that the agency had previously refused to process. (*See* Joint Status Report ("1st Status Rpt."), ECF No. 12, at 1–2 (stating that the CIA has completed processing and production for Counts 2, 8, and 9); Joint Status Report ("2d Status Rpt."), ECF No. 13, at 1–2 (stating that the CIA has completed processing and production for Counts 4, 5, and 6).)

With respect to five of the six FOIA requests that the agency categorized as completely processed, the CIA withheld information, purportedly under applicable FOIA exemptions. For example, in response to MuckRock's request for CADRE information regarding documents that the agency had previously released pursuant to a prior FOIA request, the "CIA produced two documents with portions redacted under FOIA exemptions (b)(1), (b)(3) and/or (b)(5)." (1st Status Rpt. at 1.) Additionally, with respect to MuckRock's request for classification-guidance records, "[t]he CIA produced two documents in full and eight documents with portions redacted under FOIA exemption (b)(3), [and] withheld one document in full under exemption (b)(3)[.]" (2d Status Rpt. at 1.) The agency also "withheld one document in full pursuant to exemption (b)(3)" in response to MuckRock's request for the objections to data

---

[8] These two requests—Request No. F-2014-00370, which seeks CADRE information about Fiscal Year 2013 FOIA requests (*see* Am. Compl., Count 1, ¶¶ 7–13), and Request No. F-2014-00371, which seeks CIA "regulatory issuances" (*id.*, Count 3, ¶ 33)—are not at issue in the instant motions. (*See* Def.'s MSJ Mem. at 13 n.2.)

gathering practices that the CIA had received from telecommunications and web service providers. (*Id.* at 2.)

On January 16, 2015, the CIA moved for summary judgment with respect to Count 2 and Counts 4 through 10 of MuckRock's Amended Complaint. (*See* Def.'s MSJ Mem.; *see also supra* n.9.) As relevant here, the CIA's motion asserts that it conducted a reasonable search for records responsive to MuckRock's requests and that it properly withheld information pursuant to applicable FOIA exemptions, and thus it is entitled to summary judgment on Counts 2, 4–6, 8, and 9. (*See* Def.'s MSJ Mem. at 12; *see also* Lutz Decl. (explaining the CIA's searches and withholdings); Ex. EE to Lutz Decl. ("*Vaughn* Index"), ECF No. 14-12 (delineating CIA's withholdings and the reasons therefor).)[9] In regard to MuckRock's challenge to the agency's purported email policy (Count 7), the CIA's motion argues that MuckRock lacks standing to bring this claim, and that MuckRock has relied on nothing more than sheer speculation to establish both the existence of an email policy and the injury that MuckRock claims it has suffered as a result of this purported policy. (*See* Def.'s MSJ Mem. at 40–43.) The motion further contends that any such claim is not only unripe insofar as it is not based "on any final action taken by the CIA on a particular FOIA request" (*id.* at 44), but can also be remedied in the context of any future FOIA request that MuckRock submits (*see id.* at 47 ("[T]here is no reason to believe that judicial review of a future FOIA request will be an inadequate remedy.")).

---

[9] In addition, the CIA requested summary judgment with respect to its denial of MuckRock's request for a fee waiver regarding the FOIA requests at issue in Counts 1 and 3; that issue that has since been mooted. (*See* Pl.'s MSJ Mem. at 4.)

MuckRock filed a cross-motion for partial summary judgment on June 12, 2015. (*See* Pl.'s xMSJ Mem.)[10]  In pertinent part, MuckRock's cross-motion contends that the CIA conducted inadequate searches for documents responsive to the FOIA requests at issue in Counts 2 and 5.  (*See id.* at 11–14 (challenging the searches in response to Requests No. F-2014-00381, F-2013-02200 and F-2013-02572, as described in Parts I.A.1, I.A.3, *supra*).)  MuckRock's motion also argues that the CIA improperly invoked Exemption 3 to withhold information with respect to the FOIA requests at issue in Counts 4 and 5.  (*See* Pl.'s xMSJ Mem. at 16–22 (challenging the withholdings in the documents produced in response to Requests No. F-2014-00753, F-2013-02200 and F-2013-02572, as described in Parts I.A.2, I.A.3, *supra*).)[11]  With respect to the "per se" email policy at issue in Count 7, MuckRock points to the CIA's response letter, and maintains that the agency is being disingenuous in arguing that no such policy exists. (*See* Pl.'s xMSJ Mem. at 28.)  MuckRock further contends that this Court can, and should, declare that the agency's email policy violates the FOIA and enjoin the CIA from enforcing that policy.  (*See id.* at 29–32.)

This Court held a hearing on the parties' cross-motions for summary judgment on February 17, 2016.  After that hearing, the Court ordered the parties to submit

---

[10] MuckRock did not oppose the CIA's motion for summary judgment regarding Counts 6, 8, and 9 (*see* Pl.'s xMSJ Mem.), and it subsequently withdrew those counts of the complaint (*see* Order, ECF No. 40, at 1).  In addition, MuckRock does not dispute the CIA's invocation of FOIA exemptions in connection with Count 2; with respect to that count, it challenges only the adequacy of the agency's search for documents.  (*See* Pl.'s xMSJ Mem. at 11.)  Finally, while MuckRock initially disputed the completeness of a document that the CIA had produced in response to the FOIA request at issue in Count 4 (*see id.* at 22–23), the parties have since resolved this issue (*see* Pl.'s Status Report, ECF No. 41, at 2).

[11]  The *Vaughn* Index and briefing reveal that, based on Exemption 3, the CIA redacted portions of *Vaughn* Index Documents 3 and 9, and that it withheld Documents 13 and 14 in their entirety.  (*See Vaughn* Index at 2, 7, 10; *see also* Pl.'s xMSJ Mem. at 19 n.7 (representing that MuckRock challenges the invocation of FOIA Exemption 3 "in four documents:  Entry Nos. 3, 9, 13 and 14").  Upon re-review, the CIA determined that Document 3 could be released in full (*see* Def.'s Suppl. Br., ECF No. 36, at 8), and Document 13 could be released in part (*see id.* at 7).

supplemental briefing on three discrete issues (*see* Order Requiring Suppl. Br. ("Suppl. Br. Order"), ECF No. 32), and thereafter, some of the claims and issues that were raised in the amended complaint were changed and/or mooted due to subsequent developments. (*See* MuckRock's Not. of Recent Development, ECF No. 42, at 1; Order, ECF No. 40, at 1; Pl.'s Resp. to Def.'s Suppl. Br., at 1.)

The CIA also conducted a post-hearing review of its prior withholdings, and released additional information. (*See* Def.'s Suppl. Br. at 8 (explaining that the agency released Document 3 in its entirety as a result of this re-review); *see also* Def.'s Resp. to Pl.'s Status Report, ECF No. 43, at 2.) The agency also expressly reaffirmed its decision to redact information from Document 9—a document titled "the CIA National Security Classification Guide"—under the National Security Act, on the grounds that the redacted information "identifies a different CIA component whose name and purpose have not been previously identified." (Def.'s Suppl. Br. at 7; *see also id.* ("The name of this entity would reveal the methods [CIA] uses in accomplishing its mission." (internal quotation marks omitted)).) And the agency reaffirmed its decision to withhold Document 14 in full pursuant to the National Security Act, because that document "consists of correspondence records with a web services company" and "describes a particular intelligence collection source and method" that the CIA uses. (*Id.* at 6.)[12] The agency released some portions of Document 13, which it had

---

[12] The CIA had previously justified this withholding, and others, based on the CIA Act, but here proceeds solely under the National Security Act. (*See generally* Def.'s Suppl. Br.; Def.'s Resp. to Pl.'s Status Report.)

previously withheld in full, but otherwise reaffirmed its decision to withhold the remaining portions of that document based on Exemption 3. (*See id.* at 7.)[13]

Ultimately, then, the summary judgment arguments that remain viable for present purposes involve disputes about (1) the adequacy of the CIA's search for responsive records with respect regard to Counts 2 and 5 of the Amended Complaint; (2) the CIA's invocation of FOIA Exemption 3 in regard to Counts 4 and 5, with respect to *Vaughn* Index Documents 9, 13, and 14; and (3) the CIA's contention, in regard to Count 7, that this Court lacks jurisdiction over MuckRock's claim that the agency employs a "per se" email policy, because MuckRock has failed to demonstrate that the CIA has any such policy, and in fact, the agency proceeded to process MuckRock's request for emails in this very case. These are the issues that the instant Memorandum Opinion addresses.

## II.    LEGAL STANDARDS

### A.    Summary Judgment in FOIA Cases (Generally)

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Judicial Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Rule 56 of the Federal Rules of Civil Procedure requires that a court grant a motion for summary judgment where the pleadings, disclosure materials on file, and affidavits "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Judicial Watch*, 25 F. Supp. 3d at 136 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[13]  The CIA initially withheld Document 13 in its entirety, but when it discovered that it "had previously released screenshots of certain pages of the manual[,]" the agency "reprocessed the document and released it . . . with only one redaction made on one page of the fifty-four page document." (Def.'s Resp. to Pl.'s Status Report ¶ 1.)

247 (1986)). In the FOIA context, a district court conducts a de novo review of the record when evaluating a motion for summary judgment, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *In Def. of Animals v. Nat'l Insts. of Health*, 543 F. Supp. 2d 83, 92–93 (D.D.C. 2008). The court must analyze all underlying facts and inferences in the light most favorable to the FOIA requester, *see Willis v. Dep't of Justice*, 581 F. Supp. 2d 57, 65 (D.D.C. 2008), and it may grant summary judgment to an agency only after the agency establishes that it has "fully discharged its [FOIA] obligations[,]" *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).

An award of summary judgment based solely upon the information provided in affidavits is appropriate only if the affidavits describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Not every FOIA case can be resolved on an agency motion for summary judgment that is supported by affidavits, however, and under certain limited circumstances, competing affidavits may preclude the entry of summary judgment. *See Scudder v. CIA*, 25 F. Supp. 3d 19, 28-29 (D.D.C. 2014) (citing *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18–19 (D.C. Cir. 1999); *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325–26 (D.C. Cir. 1989)).

**B.    The Adequacy Of An Agency's Search For Records**

When a plaintiff challenges the adequacy of an agency's search for records responsive to a FOIA request, the court applies a reasonableness test, and it may grant

summary judgment to the agency based on information provided in "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999); *see also Campbell v. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998) (highlighting the "reasonableness" standard). Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith," and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004) (quoting *Trans. Union LLC v. FTC*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001)).

Notably, the adequacy of a FOIA search generally turns not on the actual search *results*, but on the appropriateness of the methods the agency has used to conduct the search. *See Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted). Moreover, the agency's methodology must only be reasonable; it need not be exhaustive. *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The proper inquiry, therefore, is not whether additional documents possibly responsive to a request might exist, but whether the agency conducted a search reasonably calculated to locate responsive documents. *See id.*; *see also Iturralde*, 315 F.3d at 315.

### C.     FOIA Exemption 3

The FOIA "was enacted to facilitate public access to Government documents" in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (internal quotation marks and citation omitted). To that end, the statute mandates that "each

agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  However, the FOIA also specifies nine exemptions that allow agencies to withhold records from disclosure.  *See id*. § 552(b); *Judicial Watch, Inc. v. U.S. Dep't of the Treasury*, 796 F. Supp. 2d 13, 23 (D.D.C. 2011).  "These exemptions are explicitly made exclusive, and must be narrowly construed."  *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011) (internal citations and quotations omitted).

FOIA Exemption 3 permits an agency to withhold information that is responsive to a FOIA request where that information is "specifically exempted from disclosure by statute," provided that the applicable statute "(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).  Thus, a court proceeds through two steps when evaluating an agency's invocation of Exemption 3.  First, the court must determine whether the statute is one that "specifically exempts" certain information.  *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n,* 533 F.3d 810, 813–14 (D.C. Cir. 2008) (citation omitted).  And if indeed the statute fulfills this initial requirement, the court must then go on to determine whether "the withheld material satisf[ies] the criteria of the exemption statute."  *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990).

"An agency withholding responsive documents from a FOIA release bears the burden of proving the applicability of [the] claimed exemptions[,]" and such a showing is typically made in agency affidavits.  *Am. Civil Liberties Union v. U.S. Dep't of Def.*,

628 F.3d 612, 619 (D.C. Cir 2011).  Entry of summary judgment is appropriate when the agency's affidavit "describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith[.]"  *Id.*

## D.       "Policy-Or-Practice" Claims Under The FOIA

Finally, it is important to note that, if an agency has conducted an adequate search and has released all of the non-exempt information that is responsive to a FOIA request, federal courts ordinarily have no further role to play, even if the agency unlawfully delayed in discharging its statutory duties.  *See Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982).  Put another way, the standard FOIA claim is typically deemed moot once the agency produces the requested records.  *See Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 91 (D.C. Cir. 1986).  However, there is one category of claims that remains viable "even though a party may have obtained relief as to a specific request under the FOIA":  the agency's subsequent production of the requested records "will *not* moot a claim that an agency['s] policy or practice [with respect to processing FOIA requests] will impair the party's lawful access to information in the future."  *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (emphasis added and omitted); *see also Better Gov't Ass'n*, 780 F.2d at 91–92 (holding that a facial challenge to the validity of an agency's FOIA fee waiver policy was not mooted by the agency granting a fee waiver to plaintiff in regard to a particular request, where plaintiff was a frequent FOIA requester and an agency has not disavowed the challenged policy).  Indeed, it is well established that, "[s]o long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other

failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit." *Payne Enters.*, 837 F.2d at 491.

Significantly for present purposes, a plaintiff seeking to assert a "policy-or-practice" claim under the FOIA must satisfy constitutional standing requirements, just like any other plaintiff. *See, e.g.*, *Tipograph v. Dep't of Justice*, 146 F. Supp. 3d 169, 174 (D.D.C. 2015). That is, a plaintiff must allege (1) an "injury[-]in[-]fact" that is (2) "fairly traceable to the challenged action of the defendant" and is also (3) capable of being "redressed" by the Court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, alterations, and citations omitted). But in the context of a FOIA policy-or-practice claim, "[i]f a plaintiff demonstrates that it will be subjected in the near future to the particular agency policy or practice that it challenges under FOIA, then the injury requirement of Article III standing is satisfied." *Tipograph*, 146 F. Supp. 3d at 176; *see also Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 93 (D.D.C. 2013) (explaining that a plaintiff can show a likelihood of future injury by alleging that it has FOIA requests pending before the agency "that are likely to implicate the [challenged] policy or practice").

Additionally, any valid policy-or-practice claim must be ripe for review by a federal court. *See, e.g.*, *Payne Enters.*, 837 F.2d at 492–94. As a general matter, ripeness in this context implicates "the [plaintiff's] interest in prompt consideration of allegedly unlawful agency action[;] the agency's interest in crystallizing its policy before that policy is subjected to judicial review[;] and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle-Picher*

*Indus. v. U.S. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985).  When determining whether an issue is ripe for consideration, courts utilize "a two-part analysis, evaluating '[1] the fitness of the issues for judicial decision and [2] the hardship to the parties of withholding court consideration.'"  *Nat'l Treasury Emps. Union v. United States,* 101 F.3d 1423, 1431 (D.C. Cir. 1996) (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967), *abrogated on other grounds*).

Finally, although the language of the FOIA's remedial provision expressly authorizes a court "to *enjoin* the agency from *withholding* agency records and to *order the production* of any agency records improperly withheld from the complainant[,]" 5 U.S.C. § 552(a)(4)(B) (emphasis added), the D.C. Circuit has long held that the "FOIA imposes no limits on courts' equitable powers in enforcing its terms[,]" *Payne Enters*., 837 F.2d at 494 (citation omitted).  And "[t]his circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief."  *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 846 F.3d 1235, 1242 (D.C. Cir. 2017) (hereinafter "*CREW*").  Thus, district courts have ample authority to award declaratory and prospective injunctive relief to FOIA requesters who successfully sustain policy-or-practice claims.  *See, e.g.*, *Payne Enters*., 837 F.2d at 494.

## III.    ANALYSIS

After two complaints, countless pages of briefing, and two hearings before this Court, only three issues remain for this Court's consideration:  (1) whether the CIA conducted adequate searches for records in response to certain MuckRock FOIA requests (Counts 2 and 5); (2) whether the CIA properly invoked FOIA Exemption 3 and the

National Security Act to make withholdings with respect to three documents that are responsive to MuckRock's FOIA requests (Counts 4 and 5); and (3) whether MuckRock's claim that the CIA has a "per se" policy with respect to FOIA requests seeking emails must be dismissed for lack of subject matter jurisdiction, or qualifies as the basis for an award of summary judgment to MuckRock because there is no genuine issue of material fact regarding the existence of such a policy and its unlawfulness under the FOIA (Count 7). (*See* Pl.'s Status Report, ECF No. 41, at 1–2; Notice of Recent Development, ECF No. 42, at 1; Def.'s Response to Pl.'s Status Report, ECF No. 43, 1–5.) As explained fully below, this Court will grant summary judgment in the CIA's favor on the first two issues, because the agency conducted adequate searches for documents and properly withheld information that falls within the ambit of Exemption 3. As for the purported email policy, this Court rejects the CIA's contention that MuckRock's claim must be dismissed on jurisdictional or form-of-remedy grounds, and will award summary judgment to MuckRock, because broad equitable relief is available under the FOIA, and because MuckRock has presented unrefuted evidence that demonstrates that the CIA employs an email policy that violates the FOIA.

### A. The CIA Conducted Adequate Searches For Documents Responsive To The FOIA Requests At Issue In Counts 2 and 5

In Counts 2 and 5, MuckRock raises distinct adequacy challenges with respect to the CIA's searches for documents responsive to MuckRock's FOIA requests. In regard to Count 2, MuckRock challenges the sufficiency of the CIA's search based on *the results* of the search. (*See* Pl.'s xMSJ Mem. at 11–12.) MuckRock's challenge in Count 5 centers on *the search terms* that the CIA used to conduct its inquiry. (*See id.* at 12–14.) Neither of these challenges is successful, for the reasons that follow.

1.    The CIA's Declarations Are Sufficient To Establish That
      The Agency Conducted A Reasonable Search For Records
      Responsive To Request F-2014-00381 (Count 2)

In the FOIA request at issue in Count 2, MuckRock seeks "[a]ll information in
CADRE about the 110 records responsive to FOIA Request No. F-2010-00600."  (Am.
Compl. ¶ 23.)  The CIA produced two redacted CADRE screenshots in response to this
request (Response C06206271, Ex. A to Pl.'s xMSJ, ECF No. 22-1; Response
C06206272, Ex. B to Pl.'s xMSJ, 22-2), and MuckRock assails the adequacy of the
CIA's search because, in its view, the two CADRE screenshots are "*completely unlike
any CADRE documents previously released through FOIA*" (Pl.'s xMSJ Mem. at 11
(emphasis in original)).  To be specific, MuckRock asserts that the CADRE printouts
that it has received in prior cases have been in "portrait" orientation, while those it
received in response to this request are in "landscape" orientation.  (*See id.*; Pl's Sur-
Reply in Opp'n to Def.'s Mot. for Partial Summ. J. & Reply in Supp. of Pl.'s Cross-
Mot. for Partial Summ. J. ("Pl.'s Reply"), ECF No. 30, at 3–5.)  Based on these
formatting differences, and also because the CIA allegedly failed to produce the other
documents that MuckRock expected to receive in response to this request (*see* Pl.'s
xMSJ Mem. at 11–12), MuckRock surmises that the CIA has improperly construed the
FOIA request narrowly and in a manner that permitted the agency to withhold as "non-
responsive" certain information that exists in CADRE (*see id.* at 12).  This Court finds
that MuckRock's speculation falls far short of the showing required to thwart an award
of summary judgment in the CIA's favor on this count.

The CIA has submitted a sworn affidavit from Martha M. Lutz, the Chief of the
agency's Litigation Support Unit, that explains why the documents that the CIA
produced were not what MuckRock expected.  (*See* 2d Suppl. Decl. of Martha M. Lutz

("Lutz 2d Suppl. Decl."), Ex. A to Reply in Supp. of Def.'s Mot. for Partial Summ. J. & Opp'n to Pl.'s Mot. for Partial Summ. J., ECF No. 24-2.) In her declaration, Lutz states that, due to advancements in technology, the agency has more recently been able to capture CADRE screen shots in landscape format—also known as "task info" format—while the agency had previously been limited to portrait orientation—referred to as "hypersnap[.]" (*See id.* ¶¶ 6–8.) Furthermore, according to Lutz, "the use of [the task info] print function within CADRE yields *more* information than the previous standard hypersnap printout[.]" (*Id.* ¶ 8 (emphasis added).) Lutz also maintains that, "[w]hile task info printouts are the current IMS standard printing format for release, different offices within IMS have the discretion to print CADRE tasking information in either format . . . according to the CADRE user's preference." (*Id.* ¶ 9.) Thus, Lutz testified that it is not surprising that MuckRock previously received—and may yet continue to receive—hypersnap printouts in response to the FOIA requests that MuckRock routinely submits to the CIA.

This Court must afford the agency's declaration a presumption of good faith, *see Judicial Watch*, 25 F. Supp. 3d at 137 (citing *SafeCard Servs., Inc. v. Sec. Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)), and even MuckRock admits that, "[t]aken on its face, this explanation would appear to resolve the issue" (Pl.'s Reply at 4). But its counsel points to a declaration that Lutz submitted in another FOIA matter ten months prior to filing this statement, and in the prior declaration, Lutz purportedly declared that it was only possible to capture CADRE information in hypersnap format. (*See id.*; *see also* Suppl. Lutz Decl., Dkt. #77-1, Oct. 7, 2014, *Nat'l Sec. Counselors v. CIA*, No. 11-445 (D.D.C.) ("Lutz 2014 Decl."), Ex. K to Pl.'s Reply, ECF No. 30-1, ¶ 6

("The documents provided to plaintiff here are the best available copies of these materials and reflect all of the information that can be viewed in a CADRE entry short of having actual access to the system. The screenshots are the only way to capture and generate the processing details contained within CADRE in their native format.").) Based on this alleged inconsistency, MuckRock asserts that it would be premature to grant the agency summary judgment on the issue of whether it conducted an adequate search for records. (*See* Pl.'s Reply at 5–6 ("[I]t is clear that CIA has provided mutually exclusive explanations regarding the nature of the CADRE system to two different judges within a year, and the Court should not award summary judgment to the Agency until it has provided a satisfactory explanation for this discrepancy.").)

While the Court appreciates that MuckRock is "a frequent FOIA requester" (Am. Compl. ¶ 83), and thus has a frame of reference that can facilitate many such 'gotcha' comparisons, Lutz's prior declaration provides no basis for forestalling summary judgment, as MuckRock requests. On its face, Lutz's prior statement merely explains why the responsive records that the CIA produced in *that* matter were CADRE "screenshots" and were not produced in some other (non-screenshot) format that might have captured any additional stray text. (*See* Lutz 2014 Decl. ¶ 6.) And, the prior declaration does not distinguish between, or even discuss, landscape-versus-portrait orientation with respect to CADRE screenshots; therefore, with respect to the question at issue here, there is no apparent inconsistency between Lutz's current representation and her prior one. MuckRock also appears to ignore Lutz's *present* statements about the form and scope of the screenshots produced in this case, and this conspicuous omission may well be because MuckRock can hardly be heard to complain that the

documents that were produced in response to the instant FOIA request contain *more* information than the alternative format that MuckRock has identified. (*See* Lutz 2d Suppl. Decl. ¶ 8.)

MuckRock's argument that the CIA did not provide other types of documents that MuckRock expected to see in response to its FOIA request fares no better. (*See* Pl.'s xMSJ Mem. at 11–12; *see also* Sample Cadre Records (Notes), Ex. C to Pl.'s xMSJ, ECF No. 22-3; Sample Cadre Records (Search Results) & Ex. D to Pl.'s xMSJ, ECF No. 22-4 (appending examples records not produced in response to FOIA Request No. F-2010-00600).) As an initial matter, it is clear beyond cavil that "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde*, 315 F.3d at 315 (citation omitted); *see also SafeCard Servs.*, 926 F.2d at 1200; *Oglesby*, 920 F.2d at 68. Moreover, in her declaration, Lutz explains that the type of documents to which MuckRock points—called Requester Reports—are not routinely created in response to *all* of the FOIA requests that the CIA receives, and indeed, no such report was generated in response to this FOIA request. (*See* Lutz 2d Suppl. Decl. ¶¶ 10–11; *see also id.* ¶ 10 (explaining that Requester Reports are "lists of previously-released documents on certain broad or frequently-requested topics . . . [that] may be provided to a FOIA requester in certain cases where the requester seeks only a subset of available, previously released documents").) MuckRock's missing-documents argument therefore amounts to nothing more than a "purely speculative claim[] about the existence and discoverability of other documents," *SafeCard Servs.*, 926 F.2d at 1200—an argument that has long been deemed insufficient to support the contention that an agency's search

23

is inadequate under the FOIA, *see Morley v. CIA*, 508 F.3d 1108, 1120 (D.C. Cir. 2007).

For all these reasons, this Court easily concludes that the CIA's motion for summary judgment in regard to the search that is the subject of Count 2 of MuckRock's complaint must be granted.

2.    <u>The CIA's Declarations Are Sufficient To Establish That The Agency Conducted A Reasonable Search For Records Responsive To Requests F-2013-02200 & F-2013-02572 (Count 5)</u>

MuckRock's search-adequacy argument with respect to the documents at issue in Count 5 takes a different tack. In this regard, MuckRock assails the agency's purported search in response to its request for "any objections to agency data gathering practices received by this agency from telecommunications and web service providers" (Am. Compl. ¶ 55)[14]; MuckRock argues both that "none of the [search term] combinations [that the CIA used] are reasonably likely to yield responsive records" (Pl.'s xMSJ Mem. at 12), and that the CIA relied on a pre-selected set of search terms instead of tasking a professional CIA employee with locating responsive records (*see id*. at 13–14).

According to the Lutz declaration, to respond to this FOIA request, the CIA identified three Directorates as the divisions most likely to have responsive documents, and then tasked each with conducting both an electronic and a manual review of their files. (*See* Lutz Decl. ¶¶ 46–47.) These searches revealed one responsive document, which the CIA withheld in its entirety based on Exemption 3. (*See id.* ¶ 47; *see also* Def.'s Reply at 10.)

---

[14] Although there are two request numbers associated with this FOIA request, there was really only one request for documents. (*See supra* Part I.A.4 & n.4.)

24

Notably, in describing the full-text electronic searches that the Directorates conducted in regard to this request, Lutz identified some of the search terms that were used. (*See* Lutz Decl. ¶ 47 (listing search terms such as "objection" and "practice"; "objection" and "data gathering"; "email" or "telecommunication" and "complaint"; "web" and "provider" and/or "service"; and "web service provider" or "telecommunication" and "complaint").) This listing is not comprehensive, however, because, according to Lutz, "each Directorate had the latitude to search any additional terms it deemed most likely to return responsive documents[, and] the Directorates [also] conducted searches by hand of hard copy files so that all potentially relevant and responsive material would be located." (Lutz 2d Suppl. Decl. ¶ 14.) The CIA further represented during this Court's hearing on the pending summary judgment motions that additional information regarding these Directorate searches could be provided, even though the agency believed its initial declaration was sufficient (*see* Hr'g Tr. at 56:24–57:12), and this Court subsequently ordered the CIA to "supplement its submissions by providing a reasonably detailed explanation of how these additional searches were conducted" (Suppl. Br. Order at 2).

In response to the Court's order, the CIA followed up with the individual Directorates regarding the details of the searches, but the agency "was unable to confirm whether the Directorates tasked with the searches had used any additional search terms." (Decl. of Antoinette B. Shiner ("Shiner Decl."), ECF No. 36-1, ¶ 8.) The agency therefore *undertook to reprocess MuckRock's FOIA request entirely*, using the search terms it had initially employed and also vesting the subject matter experts within the relevant Directorates with "the latitude to add additional terms they deemed

most likely to return responsive documents."  (*Id.* ¶ 9.)  But "the subject matter experts did not add any additional terms to the search, as they judged that the suggested terms were the ones most likely to return documents responsive to the request."  (*Id.*)  In addition, as with the first search, the subject matter experts also conducted hand searches of hard copy files in the Office of the General Counsel and certain Policy Staff records.  (*See id.* ¶ 10.)  The CIA did not locate any additional records as a result of reprocessing the request.  (*See id.* ¶ 11.)

This Court has little doubt that the (multiple) searches the CIA has engaged in as a result of MuckRock's FOIA request were adequate under the FOIA.  As explained above, the touchstone when evaluating the adequacy of an agency's search for records in response to a FOIA request is reasonableness, and in particular, whether the agency made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby*, 920 F.2d at 68; *see also Physicians for Human Rights v. U.S. Dep't of Def.*, 675 F. Supp. 2d 149, 164 (D.D.C. 2009) ("[I]n responding to a FOIA request, an agency is only held to a standard of reasonableness; as long as this standard is met, a court need not quibble over every perceived inadequacy in an agency's response, however slight.").  When an agency submits a declaration that both delineates search terms that were used and avers "that all files likely to contain responsive materials (if such records exist) were searched[,]" *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), "the burden shifts to the plaintiff to provide evidence sufficient to raise 'substantial doubt' about the adequacy of the agency's search[,]" *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (quoting *Iturralde*, 315 F.3d at 314).  Moreover,

because a federal agency has "discretion in crafting a list of search terms that they believe to be reasonably tailored to uncover documents responsive to the FOIA request[,]" it is not within the reviewing court's province to nitpick the agency's selection of search terms. *Agility Pub. Warehousing Co. K.S.C. v. Nat'l Sec. Agency*, 113 F. Supp. 3d 313, 339 (D.D.C. July 10, 2015) (internal quotation marks, citation, and alteration omitted).

MuckRock would have this Court do just that. For example, in its cross-motion for summary judgment, MuckRock insists that "none of the listed combinations [of search terms] are reasonably likely to yield responsive records[.]" (Pl.'s xMSJ Mem. at 12.) Apparently expecting that this Court will undertake to evaluate this contention *sua sponte*, MuckRock offers nothing to support this bald contention and certainly fails to demonstrate the unreasonableness or ineffectiveness of the agency's use of search terms such as "telecommunication," "objection," "practice," and "complaint." And to the extent that MuckRock castigates the CIA for dictating any search terms *at all*—calling it a "hypersemantic search strategy" that "blindly rel[ied] on search terms instead of 'allowing a professional employee of the agency who was familiar with the subject area of the request to locate the records'" (*id*. at 13)—the Court is at a loss to understand how it could possibly violate the FOIA for an agency to provide reasonable guidance to those employees who are conducting the search for records, and MuckRock seems to suggest that an agency must conduct its search in a particular manner, when all that the FOIA requires is that the contours of the search are reasonable. *Compare Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146–47 (D.D.C. 2015) (holding that where the agency has used reasonable methods in conducting a search for

responsive documents, "the Court will not second guess" whether other methods "might have been superior") *with* Pl.'s xMSJ Mem. at 12 (griping that the "CIA has not explained why IMS did not simply ask the offices which receive such complaints about information gathering practices to provide those complaints").

MuckRock's contention that the agency did not bother to consult the relevant authorities when undertaking the search at issue here (*see* Pl.'s xMSJ Mem. at 14), is also contradicted by the record. The Lutz declaration specifically explains that IMS forwarded a copy of the FOIA request to the Directorates that were reasonably likely to possess responsive records—i.e., the professional employees who had familiarity with the records—and that IMS further instructed those Directorates to search "their electronic and hard copy files for '*any* documents that voice objections to agency data gathering practices[.]'" (Lutz Decl. ¶ 46 (emphasis added).) And another agency declarant confirms that the CIA permitted subject matter experts within the Directorates to identify the search terms that *they themselves* deemed most likely to locate responsive records when the searches were re-run. (*See* Shiner Decl. ¶ 9.) Thus, it was these experts who ultimately selected the search terms that were used, *not* the central office, as MuckRock mistakenly maintains.

All this means that MuckRock has fallen far short of carrying its burden of demonstrating that there is "substantial doubt" about the adequacy of the CIA's search for records in this case. *See Bigwood*, 132 F. Supp. 3d at 135. In fact, the only real effort that MuckRock makes in this regard—it conjures up a hypothetical email that it believes to be within the scope of the FOIA request, but that the CIA's described search terms purportedly would not capture (*see* Pl.'s xMSJ Mem. at 13)—is not only

insufficient but is also too clever by half, because the relevant question when evaluating

whether an agency properly conducted a FOIA search is *not* whether other unearthed

responsive documents might conceivably exist, or whether it is conceivable that

different search terms or avenues would have yielded other results, but simply and

solely whether the agency's search was reasonably likely to uncover responsive records.

*See Hedrick v. FBI*, 216 F. Supp. 3d 84, 91 (D.D.C. 2016) ("[T]he agency's search for

records need only be reasonable and need not be exhaustive."); *see also Johnson v.*

*Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (observing that

"FOIA, requiring as it does both systemic and case-specific exercises of discretion and

administrative judgment and expertise, is hardly an area in which the courts should

attempt to micro manage the executive branch").  Viewed from this vantage point,

MuckRock has raised no doubt, much less substantial doubt, about the adequacy of the

CIA's search, and as a result, the Court will enter summary judgment in the CIA's favor

with respect to Count 5.

### B.     The CIA Properly Invoked Exemption 3 In Response To The FOIA Requests At Issue In Counts 4 & 5

FOIA Exemption 3 protects from disclosure matters "specifically exempted from

disclosure by statute [where the statute] (i) requires that the matters be withheld from

the public in such a manner as to leave no discretion on the issue; or (ii) establishes

particular criteria for withholding or refers to particular types of matters to be

withheld[.]"  5 U.S.C. § 552(b)(3).  As explained previously, two issues arise when a

court evaluates whether an agency has properly invoked Exemption 3:  first, whether

the statute on which the agency relied is one that authorizes an agency to withhold

information; and second, whether the substance of the information withheld is, in fact,

the type of information the statute covers. *Pub. Citizen*, 533 F.3d at 813; *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, No. 13cv1159, 2016 WL 541127, at *7 (D.D.C. Feb. 9, 2016).

Here, the CIA invoked Exemption 3 to redact portions of Documents 9 and 13 (documents that are titled "the CIA National Security Classification Guide" and "Classification Management Tools – (CTM) User Manual," respectively) and to withhold in its entirety Document 14 (correspondence with a web services company), and the agency now relies exclusively on the National Security Act as the source of its authority for these withholdings. (*See* Def.'s Suppl. Br. at 4–8; Def.'s Resp. to Pl.'s Status Report ¶¶ 1–2.) "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley*, 508 F.3d at 1126 (internal quotation marks omitted). And it is well settled that the National Security Act authorizes the CIA to withhold information pursuant to FOIA Exemption 3. *See DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015) (holding that the director of the CIA is authorized to invoke the National Security Act for purposes of Exemption 3). (*See also* Pl.'s Reply at 2 (withdrawing "argument that CIA lacked the authority to invoke the National Security Act as an Exemption (b)(3) withholding statute").) Thus, the instant dispute pertains solely to whether or not the information that the CIA has withheld constitutes material that an agency is permitted to withhold under the terms of the National Security Act.

The provision of the National Security Act that the CIA invokes to withhold the material at issue here mandates that "[t]he Director of National Intelligence shall protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  For his part, the Director of National Intelligence has specifically required the Director of the CIA to "[p]rotect national intelligence and intelligence sources, methods and activities from unauthorized disclosure[,]" *DiBacco*, 795 F.3d at 197 (quoting Intelligence Community Directive 700, at 3 (June 7, 2012), available at http://www.dni.gov/files/documents/ICD/ICD_700.pdf) (alterations in original); consequently, this Court must evaluate the reasonableness of the agency's determination that the withheld information constitutes "intelligence sources and methods" that the CIA is barred from disclosing, *see CIA v. Sims*, 471 U.S. 159, 173–74 (1985).  In this regard, the D.C. Circuit has broadly interpreted the National Security Act to protect information "that the agency 'demonstrates can reasonably be expected to lead to unauthorized disclosure' of intelligence methods or sources."  *McClanahan v. U.S. Dep't of Justice*, 204 F. Supp. 3d 30, 49 (D.D.C. 2016) (quoting *Wolf v. CIA*, 473 F.3d 370, 377 (D.C. Cir. 2007)).  Moreover, "[i]n light of the national security interests implicated by such material, courts give even greater deference to CIA assertions of harm to intelligence sources and methods under the National Security Act."  *Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 267 (D.D.C. 2016) (internal quotation marks and citation omitted).

The CIA has submitted detailed declarations that explain how disclosure of the material that the agency has withheld in Documents 9, 13, and 14 would reveal information regarding certain sources of intelligence, various methods by which the

CIA gathers intelligence, and/or the reasons why the CIA gathers certain intelligence. (*See, e.g.*, Lutz Decl. ¶¶ 93–96; Shiner Decl. ¶ 12(b).)  This Court finds that, in so doing, the agency has carried its burden of establishing that the information that has been withheld constitutes protected intelligence sources and methods.  Specifically, the Court credits the agency's assertion that the name of the entity redacted from Document 9 constitutes an intelligence method, because the name would reveal the means by which the entity gathers intelligence.  (*See* Shiner Decl. ¶ 12(c).)  Regarding the redaction in Document 13 pertaining to "a set of checkboxes [on one page] relating to different Foreign Intelligence Surveillance Act ("FISA") dissemination control markings" (Def.'s Resp. to Pl.'s Status Report ¶ 1), the Court credits the CIA's persuasive assertion that disclosure of this information would "give foreign governments, foreign intelligence services, or other adversaries hostile to the interests of the United States insight into the Government's collection and dissemination of FISA information, almost all of which is highly classified."  (Suppl. Decl. of Antoinette B. Shiner, ECF No. 43-1, ¶ 14.)

The Court also finds that the CIA properly invoked the National Security Act and Exemption 3 to withhold Document 14, which is correspondence with a web services company that the CIA's declarant avers "discuss[es] certain covert capabilities of the CIA."  (Shiner Decl. ¶ 12(d); *see also Vaughn* Index at 10.)  MuckRock offers no specific response to this withholding (*see* Pl.'s Reply at 7–8), and thus has failed to rebut the presumption of good faith that attaches to the agency's declaration.  *See Defenders of Wildlife*, 314 F. Supp. 2d at 8.

In short, this Court is satisfied that the CIA is entitled to withhold the material in Documents 9, 13, and 14 under FOIA Exemption 3.[15]

## C.    MuckRock's "Per Se" Email Policy Claim Is Not Subject To Dismissal On Jurisdictional Grounds Or Otherwise

The only issues left for the Court to resolve at this time pertain to MuckRock's claim that the CIA improperly employs "[a] per se policy of arbitrarily refusing to process any requests for electronic communications that do not include [] four specific pieces of information" (Am. Compl. ¶ 82)—"'to' and 'from' recipients, time frame, and subject" (*id.* ¶ 81).  The CIA contends that the Court lacks jurisdiction to entertain this policy-or-practice claim under the FOIA, and that, at the very least, this claim must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Def.'s MSJ Mem. at 40, 45.)  The crux of these arguments relates to the processing procedures that the agency has employed regarding the FOIA requests for emails at issue in *this* case, and stems from the fact that, at the time that MuckRock filed the initial complaint in this matter, the CIA had refused to process MuckRock's four requests seeking email records because the requests did not "reasonably describe" the records sought without these four pieces of information.  (*See* Am. Compl. ¶ 75 (quoting from the agency's denial letter, which states that the CIA "'require[s]

---

[15]  The Court notes that, despite MuckRock's failure to raise any segregability issues, the Lutz declaration specifically states that the CIA has released all reasonably segregable, nonexempt information.  (*See* Lutz Decl. ¶ 104.)  With respect to Document 14 in particular, which the agency withheld in full, the Lutz declaration explains that the CIA reviewed the document line-by-line and determined that release of any nonexempt information "would produce only incomplete, fragmented, unintelligible phrases composed of isolated, meaningless words" or that "no nonexempt information remains."  (*Id.* ¶ 105.)  The Court credits these assertions, and finds that the CIA has satisfied its obligation to release all reasonably segregable information, and it observes that MuckRock has made no argument to the contrary.  *Cf. Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355 (D.D.C. 2015) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material, and that presumption can be overcome only with some quantum of evidence." (alteration, internal quotation marks, and citation omitted)).

requesters seeking any form of 'electronic communications' such as emails, to provide the specific 'to' and 'from' recipients, time frame and subject[, and w]e note that you have provided the senders and the time frame'"); *see also* Def.'s MSJ Mem. at 40–41.) But the CIA apparently changed its mind after MuckRock commenced the instant litigation; it re-reviewed MuckRock's requests for emails and processed them, "even though [the requests] contained only three of the four purported required elements." (Def.'s MSJ Mem. at 42.)

Thus, the CIA now questions whether MuckRock has suffered any actual or imminent injury that can support its standing to challenge the agency's purported email policy (*see id.* 42–43), and even if so, the CIA further questions whether the FOIA actually authorizes the prospective injunctive relief that MuckRock seeks here (*see id.* at 42 ("MuckRock's speculation that the CIA will automatically deny [future] unspecified requests is predicated on its erroneous assumption that CIA has a per se policy, which the CIA does not have.")). The CIA also flatly denies that any such "per se" email policy exists. (*See id.* at 42.) And the agency also maintains that, because MuckRock's policy claim is based on speculation about future agency action rather than an actual policy that the agency will necessarily apply, the claim is not ripe for review. (*See id.* at 44.) Furthermore, and finally, the CIA insists that this Court's hands are tied in any event, because "if the CIA were in the future to deny a FOIA request for electronic emails on the grounds that it does not reasonably describe the records sought, MuckRock may obtain judicial review by filing a FOIA lawsuit regarding *that* specific request" (*id.* at 45), and thus, there is an alternative remedy for any future harm such that equitable relief is inappropriate in this case (*id.*).

Most, if not all, of these various contentions are species of jurisdictional defects that would require the Court to dismiss MuckRock's email-policy claim without reaching its merits. But as explained fully below, none of the CIA's contentions is availing.

1.    A Plaintiff Can Have Standing To Challenge An Allegedly Illegal FOIA Policy Even If The Defendant Disputes Having Such A Policy

As framed by the CIA in its briefing, the critical question of whether MuckRock has standing to bring its email-policy claim turns on whether the CIA has conceded, at the outset, that it has any such policy. (*See* Def.'s MSJ at 41–42 (arguing that MuckRock cannot establish any injury-in-fact because its "assertion regarding the existence of the purported policy is not based on a CIA regulation or any other formal interpretation by the CIA" and because the agency otherwise denies the policy exists).) To be specific, the agency asserts that, in the absence of "a CIA regulation or [] other formal interpretation by the CIA" (Def.'s MSJ Mem. at 41), or unless the CIA otherwise concedes that the alleged policy exists, no entity can bring a policy-or-practice claim under the FOIA, regardless of how many times the agency has acted in accordance with the alleged policy (*see id.* at 42–43 (arguing that *Citizens for Responsibility & Ethics in Washington v. SEC*, 858 F. Supp. 2d 51 (D.D.C. 2012), and *National Security Counselors v. CIA*, 898 F. Supp. 2d 233 (D.D.C. 2012), are distinguishable because the agencies in those cases acknowledged that the challenged policy existed)). Furthermore, says the CIA, to the extent the agency deviates from the purported policy when responding to a particular plaintiff's FOIA request, not only does such agency action belie the contention that any such policy exists, but any claimed injury is

speculative and insufficient to establish standing (*see id.* at 41–43; *see also* Lutz 2d Suppl. Decl. ¶ 30 (asserting that no such policy exists)).

The CIA is wrong to insist that an agency can divest a plaintiff of standing to challenge an alleged policy pertaining to FOIA requests merely by disclaiming any policy and/or altering its behavior in the context of the particular case. To begin with, as far as the requirement of standing to bring a policy-or-practice claim under the FOIA is concerned, it is well established that "[a] plaintiff is only required to put forth a plausible, more than nebulous assertion of the existence of an ongoing pattern or practice [in order] to establish standing." *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 260 (D.D.C. 2012) (internal quotation marks, alteration, and citation omitted)). Plausible allegations with respect to the agency's conduct when handling FOIA requests will most certainly do, for the D.C. Circuit has long rejected any notion that a regulation or other formal agency policy statement is a necessary prerequisite to a policy-or-practice claim under the FOIA. *See Payne Enters.*, 837 F.2d at 491 (holding that FOIA requester was entitled to declaratory relief even though the challenged practice was "informal, rather than articulated in regulations or an official statement of policy").

Thus, it makes little sense to argue, as the CIA does here, that the plaintiff needs to point to a regulation that establishes the policy, or that the agency must concede the policy's existence, as a *threshold* matter (i.e., in order for a plaintiff to have standing to sue), because whether or not "an agency's refusal to supply information actually evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials," *Payne*

*Enters.*, 837 F.2d at 491, can *itself* be the ultimate question at issue in a FOIA policy-or-practice case. *See, e.g., Am. Ctr. for Law & Justice v. U.S. Dep't of State*, No. 16cv2516, 2018 WL 623827, at \*2–\*3 (D.D.C. Jan. 30, 2018) (addressing whether an alleged agency policy of "refusing to issue a determination and/or produce responsive documents unless and until Plaintiff files suit"—which the agency denied—existed, in the context of a motion for summary judgment, and finding that there was "no evidence that State has any policy, formal or otherwise, of forcing requesters to file suit before releasing material" (internal quotation marks and citation omitted)); *see also Forest Cty. Potawatomi Cmty. v. Zinke*, No. 14cv2201, 2017 WL 4402378, at \*16 (D.D.C. Sept. 30, 2017) (explaining that "the plaintiff must show that the defendants' delays were not due 'merely to isolated mistakes by agency officials' to establish a FOIA policy or practice claim," and granting summary judgment to the agency because the plaintiff "failed to establish a policy or practice of FOIA noncompliance"); *Muttitt v. U.S. Cent. Command*, 813 F. Supp. 2d 221, 230 (D.D.C. 2011) (denying agency's motion to dismiss, where the plaintiff's "factually specific allegations of multiple FOIA violations are sufficiently detailed to state a pattern or practice claim").

When the standing argument that the CIA makes here is properly recast as the contention that MuckRock has failed to make a plausible allegation that the CIA employs a "per se" policy pertaining to FOIA requests for emails, the agency's standing contention clearly fails. MuckRock's complaint details "specific instances of conduct by the CIA that [MuckRock] claims are manifestations of the alleged policies and practices at issue[,]" *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 260–61, and alleges that this policy was initially applied to MuckRock's FOIA requests. MuckRock's policy-

related assertions include the following specific allegations: (1) that the CIA declined to process four FOIA requests that MuckRock submitted seeking emails; (2) that the CIA justified this declination using uniform language that plainly indicated the agency's reason for not processing the requests; (3) that the agency's proffered reason specifically referenced the CIA's "require[ment]" that "requesters seeking any form of 'electronic communications' such as emails, . . . provide the specific 'to' and 'from' recipients, time frame and subject"; and (4) that the agency noted that MuckRock's FOIA requests were not being processed because they did not contain all of this information. (Compl. ¶ 75 (emphasis added); *see also* Def.'s MSJ Mem. at 30–31.) Indeed, the agency went so far as to aggregate the requests and respond to them using a single letter. (*See* Lutz Decl. ¶ 49 & n.15.)

What is more, in support of its cross-motion for summary judgment, MuckRock has presented additional, uncontroverted evidence demonstrating that the CIA has declined to process MuckRock's FOIA requests for emails for this same reason on numerous *other* occasions. (*See* Ex. I to Pl.'s xMSJ, ECF No. 22-9, at 3–4, 6–8.) And if that is not enough, MuckRock has also placed into the record a copy of an email template that the CIA has admittedly used when responding to some FOIA requests for email records—a template that states that the CIA "require[s] requesters seeking any form of electronic communications such as emails, to provide the specific 'to' and 'from' recipients, time frame and subject[,]" and that the agency declines to process the request at issue in the absence of each piece of information. (Ex. J to Pl.'s xMSJ Mem. ("Email Template"), ECF No. 22-10.)

Taken together, these allegations and pieces of evidence are more than sufficient to make the existence of a "per se" email policy plausible for purposes of the applicable standing analysis. *See Payne Enters.*, 837 F.2d at 491; *Nat'l Sec. Counselors*, 898 F. Supp. 2d at 260. Thus, the CIA's argument that MuckRock lacks standing "because it cannot establish the existence of the purported policy" (Def.'s MSJ Mem. at 41) lacks merit.

2. MuckRock Has Alleged An Injury-In-Fact, And The CIA's Subsequent Processing Of MuckRock's FOIA Requests Does Not Render MuckRock's Email Policy Claim Unripe Or Otherwise Unreviewable

It is clear beyond cavil that an agency's failure to produce documents that a plaintiff requests under the FOIA—for whatever reason—qualifies as an injury-in-fact that is sufficient to give rise to standing to bring a FOIA claim in federal court. *See Zivotofsky v. Sec'y of State*, 444 F.3d 614, 617 (D.C. Cir. 2006) ("Anyone whose [FOIA] request for specific information has been denied has standing to bring an action."). Here, the CIA nevertheless maintains that MuckRock has no such injury, because after initially refusing to process MuckRock's FOIA requests for emails in accordance with the agency's alleged "per se" policy of requiring certain information on the part of a requester, the agency in fact processed MuckRock's FOIA requests and produced the resulting records. (*See* Def.'s MSJ Mem. at 42; *see also* 1st Status Rpt. at 1–4; 2d Status Rpt. at 1–2.) Therefore, according to the CIA, MuckRock is presently uninjured, and any claim that MuckRock might be injured by the alleged email policy in the future is both unripe and incapable of being remedied by declaratory relief. (*See* Def.'s MSJ Mem. at 42.) Unfortunately for the CIA, the D.C. Circuit has considered— and soundly rejected—precisely these same arguments in a similar case. *See Payne*

*Enters.*, 837 F.2d at 487–88.

The plaintiff in *Payne Enterprises* sought to challenge the U.S. Air Force's application, and subsequent abandonment, of an informal policy of delaying the release of certain types of documents in response to FOIA requests. Payne Enterprises was a company that sold information and advice about government contracts to prospective contractors, and it frequently used the FOIA to collect time-sensitive information about government-contracting practices. *See id.* at 488. Plaintiff alleged that the Air Force had an informal policy of routinely invoking FOIA Exemptions 4 and 5 to refuse to release bid abstracts in response to Payne Enterprises' FOIA requests initially, but then invariably and without exception determining that the invoked exceptions did not apply when Payne Enterprises appealed, and ultimately releasing (the much delayed) records. *See id.* at 489. Payne Enterprises filed a lawsuit challenging the Air Force's alleged policy of delaying the release of the requested records in this fashion, and its complaint requested both declaratory and injunctive relief. The district court found that it lacked jurisdiction over Payne Enterprises' complaint because the requested documents had been produced through the administrative appeal process. *See id.* at 490. Moreover, while Payne Enterprises' appeal from the district court's jurisdictional holding was pending, the Air Force also voluntarily ceased the challenged practice. *See id.* Nevertheless, the D.C. Circuit reversed the district court's decision, and remanded the case with instructions to the district court to award Payne Enterprises declaratory relief and to consider whether injunctive relief was also appropriate. *See id.* at 495.

In rejecting the government's argument that the case was moot at the outset because Payne Enterprises had already received the documents it sought, the Circuit

distinguished between cases pertaining to *an individual FOIA request*—where the alleged injury is the requester's lack of access to records, as the FOIA requires—and cases pertaining an *overarching FOIA policy*, where the injury is the delay resulting from application of the policy.  With respect to the latter, the Circuit held that "even though a party may have obtained relief as to a specific request under the FOIA, this will *not* moot a claim that an agency policy or practice will impair the party's lawful access to information in the future."  *Id.* at 491 (emphasis added) (citation omitted).  Indeed, "[i]n this case, Payne ha[d] sought to show—and the Air Force ha[d] conceded—that the appellees are following an impermissible practice in evaluating FOIA requests, and that it will suffer continuing injury due to this practice" therefore, "[i]t is clear that Payne's challenge is not moot."  *Id.* at 490–91 (internal quotation marks, citations, and footnote omitted).  The Circuit panel also easily disposed of the agency's argument that the Air Force's voluntary cessation of the policy mooted the case, noting that the agency had not come close "to satisfying the *heavy burden* of demonstrating that there is no reasonable expectation that the alleged violation will recur."  *Payne Enters.*, 837 F.2d at 491–92 (alteration, internal quotation marks, and citation omitted).

And the Circuit went further:  it likewise found that the traditional ripeness factors—"the petitioner's interest in prompt consideration of allegedly unlawful agency action [as balanced] against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting[,]" *Eagle-Picher Indus.*, 759 F.2d at 915—"clearly weigh[ed] in favor of adjudication rather than dismissal."  *Payne*

*Enters.*, 837 F.2d at 492.  In this regard, the Circuit first explained that the case presented a singular legal question of whether the Air Force's application of the policy violated FOIA and warranted equitable relief.  *Id.* (asserting that the "Government's claim that the case does not present purely legal issues because each request is different and may implicate different concerns misses the point of this case").  With respect to the crystallization question, the Circuit also explained that "there is no doubt whatever that the challenged Air Force practice has 'crystallized' sufficiently for purposes of judicial review [because] the outlines and impact of the disputed practice are manifest." *Id.* at 492–93; *see also id.* at 493 ("It is a practice of unjustified delay by means of an initial denial followed by the eventual release of the requested document, resulting in financial injury to Payne.").  And the Circuit further concluded that there were "no institutional interests favoring postponement of review, and in fact the agency and the court have a positive interest in immediate review."  *Id.* at 493.  Finally, the Circuit held that the district court had abused its discretion in denying declaratory relief, observing that such equitable relief was warranted because of the agency's unlawful abuse of the FOIA scheme.  *See id.* at 494; *see also Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982) ("Congress did not intend for the IRS, or any other agency, to use the FOIA offensively to hinder the release of non-exempt documents.").

The similarities between *Payne Enterprises* and this case are extensive, and in this Court's view, *Payne Enterprises* entirely disposes of each of the CIA's present jurisdictional claims.  Both cases involve an agency's refusal to comply initially with an otherwise valid FOIA request because of an informal policy, followed by an agency decision to reverse course when a plaintiff challenges that policy.  Like Payne

Enterprises, MuckRock is a serial FOIA requester, i.e., it "consistently files request for emails which are denied[,]" and MuckRock has "pending requests for emails that ha[ve] not been denied yet but would be denied based on this policy[,]" putting MuckRock at risk of future injury. (Mot. Hr'g Tr. at 22:12–16.) Additionally, just as in *Payne Enterprises*, MuckRock makes a policy-or-practice claim that is not mooted simply because of the agency's decision to release the requested documents in response MuckRock's request, and that can be remedied by a district court's grant of equitable relief. *Payne Enters.*, 837 F.2d at 491–92.

In its motion for summary judgment, the CIA struggles mightily to distinguish *Payne Enterprises*—and ultimately comes up short. For example, the CIA fails to explain why the fact that the Air Force *acknowledged* the existence of the challenged policy in *Payne Enterprises*, whereas here the CIA refuses to concede that it employs such a policy (*see* Def.'s MSJ Mem. at 46), makes any difference as far as the jurisdictional questions are concerned. Regardless, so long as the plaintiff has made plausible allegations that an illegal policy exists, and that the plaintiff has not only been subjected to it at some point in the past but also likely will be subjected to it again in the future, there is a justiciable case or controversy that the plaintiff can pursue in federal court. (*See supra* Part III.C.1.) Nor can the CIA successfully maintain that MuckRock has failed to establish that it will suffer any future injury from application of this policy. (*See* Def.'s MSJ Mem. at 41–42.) MuckRock's status as a serial FOIA requester that has pending FOIA requests (*see* Mot. Hr'g Tr. at 22:12–16) is sufficient to establish that MuckRock "will be subjected in the near future to the particular agency policy or practice that it challenges under FOIA[.]" *Tipograph*, 2015 WL 7566660, at

*4; *see also Nat'l Sec. Counselors*, 898 F. Supp. 2d at 260–63 (holding that a plaintiff had standing to pursue a policy-or-practice claim when "it had already submitted fifteen FOIA requests to the CIA" that were "likely to implicate the claimed policies and practices at issue because the pending and future requests appear to be of the same character as the specific requests that form the basis of the plaintiff's current claims").

The CIA's arguments that equitable relief is inappropriate in this case because (a) the CIA has processed the requests at issue, and (b) MuckRock has an adequate remedy at law (a future FOIA lawsuit) in the event that the CIA refuses to process any of MuckRock's pending or future FOIA requests based on the alleged per se policy (*see* Def.'s MSJ Mem. at 36) miss the mark.  The D.C. Circuit has specifically held that equitable relief is available in cases where an agency is found to have enforced a policy that violates FOIA, even if no FOIA request is *currently* pending and even if the plaintiff could presumably challenge future application of the policy in subsequent FOIA lawsuits.  *See Payne Enters.*, 837 F.2d at 494; *see also, e.g.*, *Newport Aero. Sales v. Dep't of Air Force*, 684 F.3d 160, 164 (D.C. Cir. 2012); *Better Gov't Ass'n*, 780 F.2d at 91 n.23.  And it is crystal clear that an agency's practice of illegally enforcing an administrative policy at the outset, and then forcing a FOIA requester to bring individual lawsuits in the context of each FOIA request, causes "unreasonable delay[] in disclosing non-exempt documents [that] violate[s] the intent and purpose of the FOIA[.]"  *Payne Enters.*, 837 F.2d at 494 (citation omitted).  Indeed, the very injury that a FOIA policy-or-practice lawsuit seeks to remedy *is* the unreasonable delay that results from an agency's seriatim application of an unlawful policy or practice during the processing of FOIA requests, so the CIA's insistence here that individual lawsuits to

remedy future harm are available to MuckRock as a plaintiff who is perpetually

aggrieved by the alleged illegal FOIA policy makes little sense. In other words, as far

as the delay injury is concerned, individual FOIA lawsuits concerning an agency's

treatment of particular requests do not provide *any* remedy, let alone an *adequate* one.

In sum, this Court has little doubt that the D.C. Circuit meant what it said when

it held that "courts have a duty to prevent [an agency from] abus[ing]" the FOIA by

adopting a policy that unreasonably and improperly delays the disclosure of records.

*Payne Enters.*, 837 F.2d at 494 (citation omitted). And nothing in the CIA's summary

judgment brief in this case convinces this Court that it lacks jurisdiction (on standing,

mootness, or ripeness grounds, or otherwise) to review MuckRock's plausible

allegations that the CIA is abusing the FOIA process by imposing an unlawful "per se"

policy with respect to FOIA requests for emails.

> **D.** **Because There Is No Genuine Dispute That The CIA Employs An Email Policy That Violates The FOIA, MuckRock Is Entitled To Summary Judgment On Count 7, And The Court Will Order Declaratory Relief**

MuckRock argues that this Court must enter summary judgment in its favor on

Count 7 of the amended complaint, because the record "evidences a policy or practice

of delayed disclosure or some other failure to abide by the terms of the FOIA[.]" *Payne*

*Enters.*, 837 F.2d at 491. (*See also* Pl.'s xMSJ Mem. at 28–29.) This Court has

reviewed the record evidence, and has considered the CIA's contention that it has no

such policy but considers requests for email records on a "case-by-case" basis (Lutz 2d

Suppl. Decl. ¶ 30), and the Court agrees with MuckRock.

First of all, there can be no dispute that the CIA treated four of MuckRock's

requests for emails in exactly the same way; the agency aggregated the requests and

responded with a single letter in which it refused to process the requests because "[w]e require requesters seeking any form of 'electronic communications' such as emails, to provide the specific 'to' and 'from' recipients, time frame and subject." (Ex. U to Lutz Decl., ECF No. 14-10; *see also* Lutz Decl. ¶ 49 & n.15.) MuckRock has also submitted unrefuted evidence that the CIA has a "template" to this effect (Ex. J to Pl.'s xMSJ Mem., ECF No. 22-10), and the CIA has apparently used similar rationale when it refused (at least initially) to process at least eight other FOIA requests that MuckRock submitted. (*See* Ex. I to Pl.'s xMSJ Mem., ECF No. 22-9.)

The CIA does not deny that it has, in fact, used the template that MuckRock points to as evidence of the policy, although it couches this admission with the bald assertion that the letter template itself "has been used on a case-by-case basis[.]" (Lutz 2d Suppl. Decl. ¶ 31.) The CIA further maintains that, "over time, CIA's electronic search capabilities have improved," such that the agency "is now usually able to accept and process requests that contain only the name of either the sender or the recipient" (*id.* ¶ 32), but this purported advancement in the manner in which the agency approaches requests for emails says nothing about whether the agency routinely employed a policy of not processing emails for the reasons stated in the letter template previously, or whether the agency could again opt to employ such a policy to MuckRock's pending or future email requests, which are the only pertinent questions at issue here. *See Payne Enters.*, 837 F.2d at 491–92 (holding that the Air Force's "promise to desist from following the challenged practice" was insufficient to thwart judicial review of the practice). It is also notable that, in striking contrast to MuckRock's evidence regarding the existence of a "per se" email policy, the CIA has

not presented *any* evidence predating the commencement of this case that demonstrates that the agency processed a single FOIA request for email records that did *not* satisfy the policy that MuckRock alleges exists.  (*See* Lutz 2d Suppl. Decl. ¶¶ 33–37 & Ex. B (discussing and attaching two FOIA responses that post-date the complaint in this matter).)

The CIA spends much of its energy denying the existence of any such policy, presumably because it cannot credibly dispute that such a policy violates the FOIA.  By its express terms, section 552(a)(3) sets forth only one standard for the categorical rejection of a request for records based on its substance:  that the documents sought are not "reasonably described."  *See* 5 U.S.C. § 552(a)(3)(A); *see also Dale v. IRS*, 238 F.Supp.2d 99, 104 (D.D.C. 2002) (holding that an agency can refuse to process "broad, sweeping [FOIA] requests lacking specificity").  It is well established that, in order to "reasonably describe" the records sought for the purpose of this statutory provision, a FOIA request must be such that "a professional employee of the agency who was familiar with the subject area of the request [could] locate the record with a reasonable amount of effort."  *Kenney v. U.S. Dep't of Justice*, 603 F. Supp. 2d 184, 188 (D.D.C. 2009); *see also MacLeod v. U.S. Dep't of Homeland Sec.*, No. 15cv1792, 2017 WL 4220398, at *12 (D.D.C. Sept. 21, 2017).  And in the context of the instant dispute, the CIA has done nothing to demonstrate that the agency's employees need all four pieces of information—the sender, recipient, subject, and time frame—in order to locate email records in the agency's information systems; indeed, by its own admission, the CIA can often determine what email records are being sought, and can conduct a search for those records, *without* having all four of the pieces of information that the alleged policy

delineates.  (*See* Lutz 2d Suppl. Decl. ¶ 32 (explaining that the CIA's system "is usually now able to accept and process requests that contain only the same of either the sender or recipient").)  *See also Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982) (holding that whether a request reasonably describes the records sought turns on "whether the agency is able to determine precisely what records are being requested" (internal quotation marks and citation omitted)).  This means that the FOIA does not authorize the CIA to deny a FOIA email request categorically, simply and solely because the request does not reference the sender, recipient, subject, and time frame.  *Cf.* S. Rep. No. 93-854, at. 10 (1974) (noting that Congress intended the "reasonably described" language to be interpreted liberally, and that this standard "should not be used to obstruct public access to agency records").

All things considered, then, this Court easily finds that there is no genuine dispute that the CIA has employed a policy of categorically refusing to process MuckRock's FOIA requests for email records that do not specify "to" and "from" recipients, time frame, and subject, and it concludes that this policy violates the FOIA. Therefore, this Court will enter summary judgment in MuckRock's favor on Count 7's policy-or-practice claim, and will declare that this per se policy violates the FOIA.

Notably, insofar as MuckRock has requested *both* declaratory *and* injunctive relief on this aspect of its complaint (*see* Am. Compl. ¶ 85), this Court cannot oblige. To be sure, in addition to the aforementioned declaratory relief, MuckRock is eligible for prospective injunctive relief that bars the CIA from applying its email policy when responding to any future FOIA requests for email records that MuckRock submits.  *See, e.g.*, *CREW*, 846 F.3d at 1246; *Payne Enters.*, 837 F.2d at 494.  However, with respect

to such injunctive relief, the D.C. Circuit requires a district court to evaluate "the likelihood of continued delinquent conduct by the agency[,]" *Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*, 874 F.3d 287, 293 (D.C. Cir. 2017), while keeping in mind that "[a] government defendant is presumed to adhere to the law declared by the court[,]" *id*.  Here, MuckRock makes no argument in its briefs that the CIA will likely continue applying this policy if this Court declares that the policy is unlawful, and there is otherwise no record evidence to overcome the presumption of adherence to which the agency is entitled.  Accordingly, this Court will limit its award of equitable relief to a declaration that the CIA's email policy violates the FOIA.

## IV.    CONCLUSION

The CIA has established that it conducted an adequate search for responsive records with respect to Counts 2 and 5, and that it properly invoked FOIA Exemption 3 and the National Security Act with respect to its withholding of the three records that remain at issue in Counts 4 and 5.  Therefore, the agency is entitled to summary judgment on Counts 2, 4, and 5.  Liewise, MuckRock has shown that the CIA has enforced a processing policy with respect to requests for emails that contravenes the FOIA, and thus, MuckRock is entitled to summary judgment on Count 7.  Accordingly, as set forth in the accompanying Order, both parties' motions for summary judgment are **GRANTED IN PART and DENIED IN PART**.


DATE:  February 28, 2018                    *Ketanji Brown Jackson*
                                            KETANJI BROWN JACKSON
                                            United States District Judge