UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUCKROCK, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14-CV-00997 |
| | ) |
| CENTRAL INTELLIGENCE AGENCY | ) |
| | ) |
| Defendant. | ) |

## OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN CASE

### INTRODUCTION

In this action, counsel for Plaintiff Muckrock, L.L.C. ("Muckrock") seeks to reopen this Freedom of Information Act ("FOIA") case that he voluntarily dismissed on July 24, 2020, before claiming two months later that he had "erroneously overstated the scope of the intended dismissal" because he had forgotten one of the Counts due to the passage of time. Errata, ECF No. 67. Rather than filing a motion to reopen at that time, he simply filed the Errata. Now, more than three years later, he seeks to reopen the case. He bases the motion on the receipt of a response from the National Archives and Record Administration ("NARA") regarding NARA-originated documents which the Defendant Central Intelligence Agency ("CIA") had referred to NARA for a direct response to Muckrock in connection with the FOIA request which had been at issue in Count 1.

Muckrock's motion should be denied for at least two reasons. First, it is an untimely motion to correct Muckrock's own mistakes that occurred more than three years ago – namely its alleged inadvertent failure to remember Count 1 and its failure to file a motion to reopen the case once it realized its alleged error. Second, even if its motion is not untimely, Muckrock has failed to demonstrate the required extraordinary circumstances to justify relief under Rule 60(b)(6). This

1

is not a case in which CIA had failed to disclose any key facts. As explained below, CIA had notified Muckrock that it had referred documents originating with other agencies for a direct response. Moreover, Muckrock does not assert any actual interest in the documents produced by NARA, much less that the documents were the primary focus of Muckrock's FOIA request.

Accordingly, Muckrock's motion should be denied.

## BACKGROUND

In this action, filed in 2014, Muckrock sought to compel production of records to nine different Freedom of Information Act ("FOIA") requests submitted to CIA in December 2013. *See* First Amended Complaint ("Am. Compl."), ECF No. 8. In addition, Muckrock challenged an alleged CIA policy regarding FOIA requests for emails ("Email Policy"). *Id.* ¶¶ 79-85. In 2015, the parties filed cross-motions for partial summary judgment with respect to seven of the FOIA requests, as well as Muckrock's challenge to the alleged Email Policy. *See* ECF Nos. 14 & 20. Following briefing, Muckrock withdrew certain claims and stipulated that another count was moot. *See* Order, ECF No. 40; Notice of Recent Development, ECF No. 42. On February 28, 2018, the Court granted CIA's motion for partial summary judgment with respect to the FOIA requests at issue in Counts 2, 4 and 5, and denied CIA's motion with respect to Count 7, pertaining to the alleged "Email Policy." *See* Order, ECF No. 46. Accordingly, following the Court's February 28, 2018 Order, only two counts remained to be adjudicated– Counts 1 and 3.

In Count 1, Muckrock sought to compel production of records in response to its December 4, 2013 FOIA request for "all information in the [CIA' s Office of Information Management Services ("IMS")] request database CADRE[1] about all FOIA, Privacy Act,

---

[1] The CIA's Automated Declassification and Review Environment ("CADRE") is a repository for documents reviewed under release programs, including FOIA, Privacy Act, and MDR. Decl. of

2

[Mandatory Declassification Requests], or similar requests received in the first quarter of Fiscal Year 2013." Am. Compl., ¶ 11.  In its request, Muckrock asserted that the purported purpose of this request was to provide information that would allow Muckrock to phrase their FOIA requests "in a form most likely to satisfy the CIA's frequent complaint that requests do not reasonably describe the records sought in a fashion easily understood by IMS professionals." *Id.* ¶ 14.

On August 31, 2015, the CIA issued its first response to this request.  In its response, the CIA stated that it had "located one thousand two hundred four *CIA originated documents*," releasing 991 documents in segregable form with redactions and withholding 171 documents in full.  Pl.'s Mot. to Reopen, Exh. A, ECF No. 69-1 (emphasis added). In addition, it explained that "a number of documents originating with other government entities were referred for their review and direct response to you." *Id.*   CIA issued five supplemental responses, releasing portions of some additional CIA originated documents.  *See* Letter to Kel McClanahan from Michael Lavergne dated Nov. 1, 2016 (releasing 617 documents in part and withholding 37 documents in full); Letter to Kel McClanahan from Allison Fong dated April 7, 2017 (releasing 52 documents in part); Letter to Kel McClanahan from Allison Fong dated May 1, 2017 (releasing 89 documents in part and withholding 3 documents in full); Letter to Kel McClanahan from Allison Fong dated June 15, 2017 (releasing 324 documents in part and withholding 88 documents in full); Letter to Kel McClanahan from Allison Fong dated Oct. 10, 2017 (releasing 5 documents in part).  *See* Joint Status Report, ECF No. 47 ¶ 1.  As in its initial response, the CIA stated in its June 15, 2017 response that, in addition to the CIA records produced in part

---

Martha Lutz, ECF No. 14-2 at 8 n.2.  It also serves as an application used by IMS for processing documents responded to information access requests.  *Id.*

with its response, "a number of documents originating with other government entities were referred for their review and direct response to you." Letter to Kel McClanahan from Allison Fong dated June 15, 2017 (attached as Exh. 1). Although CIA had explicitly stated in two of its responses that it had referred a number of documents originating with other government entities for their review and direct response, Muckrock never inquired about the identities of the agencies or their status of those referrals.[2]

On February 28, 2018, following the Court's decision on the parties' cross-motion for partial summary judgment on certain counts, the Court ordered the parties to file a joint status report on the two remaining counts. Pursuant to that order, the parties filed a Joint Status Report on March 19, 2018. *See* Joint Status Report, ECF No. 47, ¶ 1. With respect to Count 1, the CIA stated that it had completed the processing and production of documents with respect to Count 1, listing each of its response letters. The CIA also stated that, "[i]n addition, the CIA [had] referred a number of documents originating with other government entities to those agencies for a direct response" and cited, as examples, responses sent by the Federal Bureau of Investigation, the Director of National Intelligence, and the National Reconnaissance Office. *Id*. The report also indicated that Muckrock was reviewing the responses to determine what issues, if any, remained with respect to Count 1 on or before April 6, 2018. With respect to Count 3, which sought all "CIA regulatory issuances included in the internal Agency-wide regulatory database located in the Classified Management and Collaboration Group," CIA explained that this request involved a significant volume of complex and sensitive materials which required coordination

---

[2] As explained *infra* at 12, the fact that Muckrock expressed no interest in such referrals is not surprising because the documents originating with other government agencies shed no light on its stated purpose for the FOIA request, namely trying to understand how CIA interprets FOIA requests so that it could better frame its requests to avoid complaints by CIA that its requests do not reasonably describe the record sought.

among subject matter experts across the Agency Directorates to ensure consistency in withholdings.  *Id.* ¶ 2.  The CIA stated that it anticipated that it would be able to begin production of such documents in the summer of 2018.

On April 6, 2018, the parties filed another Joint Status Report.  *See* Joint Status Report, ECF No. 48.  In its report, the parties explained that Muckrock had sought further information about the CIA records withheld in full, and in response CIA provided a list of six categories of documents withheld in full.  *Id.* ¶ 1.  In the report, Muckrock stated that it is challenging withholdings in four categories, but asserted that "[u]ntil CIA provides a *Vaughn* index and sworn declaration identifying which withholdings fall within which of these categories, Muckrock cannot identify the challenged withholdings with any greater specificity."  *Id*.  CIA responded that a Vaughn index is not required until the agency files its motion for summary judgment.  *Id.*

As Muckrock acknowledges, after filing the Joint Status Report on April 6, 2018, neither party mentioned Count 1 in any filings, nor did their respective counsel mention it in any correspondence.  Pl.'s Mot. to Reopen at 4.  Instead, the focus was on Count 3, which sought all "CIA regulatory issuances included in the internal Agency-wide regulatory database located in the Classified Management and Collaboration Group."  Am. Compl., ¶ 33.  The parties filed periodic Joint Status Reports updating the Court on the status of the CIA processing.  *See* ECF Nos. 49, 50, 52.

The CIA completed processing of the records responsive to Count 3 on March 21, 2019.  Joint Status Report, ECF No 54 ¶ 1.  The parties then agreed to a schedule for summary judgment with respect to Count 3, with CIA filing its initial motion in October 2019.  In their motions and memoranda, both the CIA and Muckrock described Count 3 as the only remaining

count.  *See* ECF Nos. 58-2 & 62-1.  On July 15, 2020, after the CIA filed its Opposition to Plaintiff's Cross-Motion for Summary Judgment and Reply in Support of Defendant's Motion for Summary Judgment, ECF. No. 65-1, Muckrock's counsel advised CIA's counsel that "[w]e have decided to voluntarily dismiss Count 3, bringing this case to a close with the exception of fee discussion," to which CIA's counsel replied, that "[w]e are agreeable to your dismissal of Count 3, the last remaining count in this case." Pl.'s Mot. to Reopen at 4 (citing to email attached as Exh. B, ECF No. 69-2)).  Muckrock then filed a Notice of Voluntary Dismissal on July 24, 2020. ECF No. 66.

Two months later, on September 22, 2020, Muckrock filed an "Errata" stating that it had "erroneously overstated the scope of the intended dismissal" because it inadvertently forgot about Count 1.  *See* Errata, ECF No. 67.  Muckrock thus asserted that the closure of the case was in error.  On October 6, 2020, Muckrock's counsel sent CIA's counsel an email noting that the case "still shows up as 'closed' in ECF and suggesting that the parties file a motion to set a briefing schedule.  *See* Pl's Mot. to Reopen, Exh. C, ECF No. 69-2.  The next day CIA's counsel responded, stating that Count 1 was waived at this point through Muckrock's inaction with respect to Count 1 for over two years.  *Id.*

Muckrock's counsel replied, stating that he plans to file a "motion for a status conference since plaintiff cannot waive a FOIA count through inaction."  *See* Email from Kel McClanahan to Marcia Sowles dated October 7, 2020 (attached as Exh. 2).  CIA counsel sent an email in response noting "even if Count 1 is not dead, it was certainly sleeping soundly because he had failed to mention it for over two years."  *See* Email from Marcia Sowles to Kel McClanahan dated Oct. 8, 2020 (attached as Exh. 3)*.*  CIA counsel further stated that "it [was] hard to understand why Plaintiff is now interested in internal CADRE records about FOIA requests filed

in a 3 month period in 2013." *Id.* With that said, CIA's attorney nevertheless stated, "in an effort to try to resolve the issue, CIA would be willing to discuss providing additional information describing a small sample of the documents withheld in full in response to Count 1." *Id.* CIA's counsel concluded by saying "if you still want to request a status conference, we do not oppose and our position at the status conference will be as outlined above." Muckrock's counsel, however, never filed the motion. Nor did he make any other effort to pursue Count 1.

On March 9, 2023, NARA sent a letter to Muckrock's counsel, explaining that the CIA had referred several NARA-originated records responsive to its December 4, 2013 request to NARA for review and direct response to Plaintiff. Letter to Kel McClanahan from Brewer Thompson, Deputy FOIA Officer/Archivist, Office of General Counsel (attached as Exh. 4). NARA explained that the documents referred to it were "copies of consultation request letters sent to CIA from NARA-administered Presidential Libraries." *Id.* NARA attached to its letter "the first tranche of documents (13 document, 29 pages)." *Id*. It further explained that "[t]here are approximately 396 more documents of similar type that require review and redaction before they can be served to you." *Id.* Muckrock's counsel made no attempt to reach out to CIA's counsel after receiving NARA's letter and initial production.[3]

On December 6, 2023, NARA sent Muckrock's counsel its final response, releasing 396 documents with partial redactions pursuant to Exemptions 3, 5 and 6. Pl.'s Mot. to Reopen, Exh. D, ECF No. 69-4. At that point, Muckrock's counsel sent an email to CIA's counsel "[t]oday I learned that the request in Count 1 wasn't even finished being processed until today, when

---

[3] Muckrock's counsel tries to justify his failure on the grounds that he was not aware that NARA letter related to this case because it did not mention this case. *See* Errata, ECF No. 70. Although the letter does not mention this case, the letter does clearly cite to the CIA FOIA number for the request (FOIA 2014-00370) and specifically quotes Muckrock's request to the CIA and identifies the date of Muckrock's request to the CIA.

7

NARA sent me its final response to the records referred to it by CIA in the middle of our litigation." Email from Kel McClanahan to Marcia Sowles dated Dec. 7, 2023 (attached as Exh. 5). In his email, he asked CIA whether it would consent to a motion to reopen the case. *Id*. CIA's counsel responded that CIA would not consent to reopen the case, noting that Muckrock was on notice that CIA had referred documents originating with other government entities to those agencies for a direct response on at least three occasions between 2015 and 2018 and thus had ample opportunities to inquire about such referrals before agreeing to dismiss the case, but never did so. *Id*. On February 24, 2024, Muckrock filed this motion to reopen the case.

## ARGUMENT

Rule 60(b) of the Federal Rules of Civil Procedure provides that a "court may relieve a party or its legal representative from a final judgment, order, or proceeding" for reasons stated in six clauses, the first five of which cover particular circumstances and the sixth of which applies to "any other reason that justifies relief." Fed. R. Civ. P. 60(b). Rule 60(b)(6) motions must be brought within a "reasonable time" and, with respect to motions brought under Rule 60(b)(1) through (b)(3), in "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

As the Supreme Court has stressed, "[t]here must be an end to litigation someday and free, calculated deliberative choices [cannot] be relieved from." *Ackerman v. United States,* 340 U.S. 193, 198 (1950). Accordingly, courts have held that Rule 60(b) motions "should only sparingly [be] used" and have placed limitations on their use. *Good Luck Nursing Home, Inc. v. Harris,* 636 F.2d 572, 577 (D.C. Cir. 1980). First a plaintiff cannot use Rule 60(b)(6) motion to avoid claims that are premised on one of the grounds enumerated in clauses (b)(1) through (b)(5). *Jarvis v. Parker,* 13. F. Supp. 3d 74, 80 (D.D.C. 2014) (citing *Liljeberg v. Health Servs. Acquisition Corp,*

486 U.S. 847, 863 (1988).  Second, "the Supreme Court has consistently held that Rule 60(b)(6) motions should only be granted in 'extraordinary circumstances." *Id.* (quoting *Ackerman,* 340 U.S. at 199)

In this case, Muckrock's motion should be denied for at least two reasons.  First, it is an untimely motion to correct its own mistakes that occurred more than three years ago.  Second, Muckrock fails to demonstrate any extraordinary circumstances.

**I.      Muckrock's Rule 60(b)(6) Motion Is Untimely.**

The clauses of Rule 60(b) "are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' [under Rule 60(b)(1)] may not seek relief more than a year after the judgment by resorting to subsection (6)." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993); *Salazar ex rel. Salazar v. District of Columbia*, 633 F.3d 1110, 1116 (D.C. Cir. 2011) ("[S]ubsection (6) cannot be used to avoid the one-year limitation."). A Rule 60(b)(6) motion is "untimely" if it is brought more than a year after final judgment, order, or proceeding and asserts claims that were "cognizable" under Rule 60(b)(1). *Kemp v. United States*, 596 U.S. 528, 539 (2022).

Although Muckrock contends that it is not seeking relief under Rule 60(b)(6) to avoid the time limitation in Rule 60 for relief under Rule 60(b)(1), that is exactly what it is doing.  It is trying to use its unexpected receipt of a letter from NARA in 2023 as an excuse for avoiding its own series of strategic choices which it labels as "mistakes" or "inadvertent" errors made with respect to Count 1 more than three years ago.

First, this is not a case in which CIA failed to inform Muckrock that it had referred documents originating with other agencies to those agencies for direct referral.  In a letter dated August 31, 2015, CIA's Information and Privacy Coordinator informed Plaintiff's counsel that CIA

had located 1,204 "CIA originated documents" and went on to note that, "[a]dditionally, a number of documents *originating with other government entities were referred for their direct response to you.*" Pl.'s Mot. to Reopen, Exh. A, ECF 69-1 (emphasis added). Muckrock was again notified of such referrals in CIA's supplemental response on June 15, 2017. *See* Exh. 1. The Joint Status Report filed by the parties on March 19, 2018, ECF No. 47, also explicitly mentioned the referrals. It stated that, in addition to the documents that CIA cited in its responses, "CIA referred a number of documents originating with other government entities to those agencies for a direct response" and citing examples of responses. *Id.* Documents sent to another agency for direct response to the requester are not generally tracked by CIA unless there is reason to believe a problem exists in receiving a response from the agency to which the documents were referred. CIA had clearly notified Muckrock that some responsive documents had been referred to their originating agencies for a direct response. Despite this notice, Muckrock did not make any inquiries to the CIA regarding the identities of the agencies or the status of the referrals.

Second, the fact that the case was closed is due to Muckrock's filing of a Notice of Voluntarily Dismissal, which it later claimed was a mistake. That Notice stated that Plaintiff had "elect[ed] not to further contest any of the issues remaining in controversy in this case" because it "has determined that the remaining issues in controversy do not warrant any further expenditure of the parties' or the Court's time and effort." ECF No. 66. Two months later, Muckrock's counsel attempted to correct this alleged error by filing an Errata asserting that, "when reviewing the cases file for the purpose of potential appeal, [he] discovered that the parties had inadvertently neglected to brief Count 1 because of the passage of time, despite indicating in 2018 that it remained in controversy." ECF No. 67. But there was nothing inadvertent about not briefing Count 1; Muckrock's counsel indicated that he did not want to expend further "time and effort" on the case.

*Id*.  To the extent Muckrock was interested in pursuing Count 1, it had ample opportunity between 2018 and its filing of the dismissal to do so.

Third, Muckrock's counsel admits that he realized the case remained closed after he filed the Errata on September 22, 2020, but for over three years failed to file a motion or take any take any other steps in Court to reopen it.  Although he sent an email to the CIA's attorney stating that he planned to file a request for a status conference, he chose not to do so, despite CIA's representation that it would not oppose filing a motion for a status conference.  Muckrock's counsel seeks to justify his failure to do so for a variety of reasons including the then "ongoing coronavirus emergency." Pl.'s Mot. to Reopen at 5.  That is no excuse.  Litigation proceeded during the pandemic, the filing of court documents is electronic, and hearings were held remotely. But even assuming arguendo these factors were responsible for the delay, they could at most support finding that Muckrock's failure to litigate Count 1 for three years was excusable neglect, which is plainly subject to Rule 60(c)(1)'s time limitation.  Accordingly, the fact that this case has been closed for three years is due to Muckrock's own failure to prosecute Count 1.  Muckrock's counsel cannot use this receipt of the NARA letter to rescues him from his own errors.

**II.        Muckrock Has Failed to Demonstrate the Extraordinary Circumstances Required for Relief under Rule 60(b)(6).**

Moreover, even assuming arguendo that Muckrock were not impermissibly seeking relief on Rule 60(b)(1) grounds, the motion does not "clear [the] very high bar to obtain relief under Rule 60(b)(6)." *Kramer v. Gates*, 481 F.3d 788, 792 (D.C. Cir. 2007); *see also Jarvis*, 13 F. Supp. 3d at 80 ("Plaintiffs bear the burden for showing the appropriateness of Rule 60(b) relief.")  "The Supreme Court has consistently held that Rule 60(b)(6) motions should only be granted in 'extraordinary circumstances.'" *Jarvis*, 13 F. Supp. 3d at 80 (quoting *Ackermann*, 340 U.S. at 199). Rule 60(b)(6) permits courts to vacate judgments when "appropriate to accomplish justice."

11

*Liljeberg*, 486 U.S. at 864 (quoting *Klapprott v. United States*, 335 U.S. 601, 614–15 (1949)). This Rule should not be used to rescue a plaintiff from "a litigation choice that 'turned out to be improvident.'" *Kramer*, 481 F.3d at 792 (quoting *Good Luck Nursing Home, Inc.,* 636 F.2d at 577. Granting Rule 60(b)(6) relief for this kind of "garden-variety attorney error . . . would do violence to the Supreme Court and D.C. Circuit's instructions that this provision should be 'sparingly used.'" *Jarvis*, 13 F. Supp. 3d at 80 (quoting *Kramer*, 481 F.3d at 792). Rather, circumstances courts have found "extraordinary" include "when a party timely presents a previously undisclosed fact so central to the litigation that it shows the initial judgment to have been manifestly unjust," *Good Luck Nursing Home*, 636 F.2d at 577, when "fraud [is committed] by the party's own counsel, by a codefendant, or by a third-party witness, or when the losing party fails to receive notice of the entry of judgment in time to file an appeal." *Jarvis*, 13 F. Supp. 3d at 80 (internal quotation marks omitted).

Muckrock has failed to present any such extraordinary circumstances here. Contrary to Muckrock's suggestion, this is not a case in which the CIA failed to disclose any key facts. As explained *supra* at 3-4, Muckrock was on notice since August 2015 that CIA had referred documents that originated with other agencies to those agencies for a direct response. Moreover, nowhere in its motion does Muckrock assert that it has any actual interest in the documents produced by NARA, much less that they are "key" documents that were the primary focus of its request. Indeed, it cannot. As the NARA letter explains, the records that CIA referred to NARA were "copies of consultation request letters sent to CIA from NARA-administered Presidential Libraries." Pl.'s Mot. to Reopen, Exh. D, ECF No. 69-4. In its complaint, Muckrock asserted that the purported purpose of this particular FOIA request was provide information that would allow Muckrock to phrase its FOIA requests "in a form most likely to satisfy CIA's frequent complaints

that requests do not reasonably describe the records sought in a fashion easily understood by IMS professionals." Am. Compl. , ¶ 14. The documents at issue would reveal nothing about how IMS professionals interpret FOIA requests because the documents at issue are not FOIA requests. Instead, they are letters sent by NARA-requested Presidential Libraries regarding requests form mandatory declassification review of specific documents. Thus, while such documents were technically responsive to its FOIA request because it included not only FOIA request but also MDR and consultation requests received from other federal agencies, the NARA documents shed absolutely no light on how CIA interprets FOIA requests. Indeed, the fact that such documents were not relevant to the purported purpose of its FOIA request may well explain why Muckrock never inquired about the referrals made by CIA to other agencies.

Accordingly, even if Muckrock's request is viewed under Rule 60(b)(6), it should be denied.

## CONCLUSION

For the reasons stated above, the Court should deny Plaintiff's Motion to Reopen this case.

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*s/Marcia K. Sowles*
MARCIA K. SOWLES
DC Bar No. 369455
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street N.W. Room 11028
Washington, D.C. 20530

13

Tel.: (202) 514- 4960  
Fax: (202) 616- 8470  
E-mail:  marcia.sowles@usdoj.gov

Attorneys for Defendant