UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MUCKROCK, LLC, | * |
| Plaintiff, | * |
| v. | * |
| | *  Civil Action No. 1:14-cv-00997 |
| CENTRAL INTELLIGENCE AGENCY, | * |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**PLAINTIFF'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO REOPEN CASE**

Because Plaintiff MuckRock, LLC ("MuckRock") filed a fairly straightforward motion and Defendant Central Intelligence Agency ("CIA") has only attempted to rewrite history to oppose it, MuckRock will only briefly respond to the contentions CIA raised in its opposition, which are at best irrelevant and at worst "shameless twisting of the factual record in this case to portray their . . . position in a better light [which] falls short of the level of representation that this Court expects of a United States government agency." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 139 (D.D.C. 2013).

CIA's contentions fall into two basic categories: misleading claims about the reasons for the delay and irrelevant claims about the alleged importance of the issues. MuckRock will set the record straight about the first category in roughly the order in which CIA made the claims, but will not expend any more time responding to the second category of arguments, since they are based on a presumption that is itself incorrect: namely, that the Court should closely examine the "importance" of the records MuckRock requested and make detailed determinations about whether the newly released records are "relevant" to MuckRock's request. The records were

responsive, they were specifically requested, and they were accordingly relevant, and CIA cannot be heard to share its opinion about whether they are "really" relevant based primarily MuckRock's statement regarding one of its reasons for filing the request in the first place.

As an initial note, while MuckRock definitely maintains that CIA is litigating in bad faith in this case, it does not maintain that that was always the case. MuckRock is willing to assume for the sake of argument that CIA's initial oversight was just that: an oversight. The fact remains, however, that while CIA may have honestly just forgotten about the referral of records to the National Archives and Records Administration ("NARA") between 2015 and 2018,[1] its attempts since 2020 to try and place the blame on MuckRock crossed the line into bad faith litigation. *See id.* at 136 (acknowledging distinction drawn by the undersigned between CIA making a mistake and CIA "refus[ing] to acknowledge the mistake . . . and repeatedly represent[ing] to the Court that its [action] was correct and the undersigned was wrong").

This is most apparent in CIA's repeated contention that "this is not a case in which CIA failed to inform MuckRock that it had referred documents originating with other agencies to those agencies for direct referral" (CIA's Opp'n at 9), which is both technically correct and deliberately misleading. As MuckRock already pointed out—and CIA does not contest—CIA informed MuckRock that it had referred *an unknown number of records* to *an unknown number of agencies* which it *did not identify*. Then, in 2018, CIA followed that statement in the Joint Status Report with a discussion of how three agencies had responded to the referrals. (J. Stat. Rep., Dkt. #47, at 2 (filed Mar. 19, 2018) [hereinafter 3/18 JSR].) There was absolutely no

---

[1] CIA even admits, albeit not in admissible testimony, that it does not generally track documents sent to another agency for direct response to the requester "unless there is reason to believe a problem exists in receiving a response from the agency to which the documents were referred." (Def.'s Opp'n Pl.'s Mot. Reopen Case, Dkt. #72, at 10 (filed Apr. 1, 2024) [hereinafter CIA's Opp'n].) While this admission is legally problematic for other reasons discussed below, it would explain why CIA apparently forgot in 2018 that it had referred records to NARA in 2015.

2

indication in either the correspondence or this Joint Status Report that these were simply "examples of responses," as CIA now claims. (CIA's Opp'n at 10.) Instead, the implication was clear: CIA referred records to three agencies, and three agencies responded.

Had CIA known that NARA was still processing responsive records, it could not legally have jointly filed a status report stating that the only thing left was for MuckRock to "identify which withholdings, if any, it is challenging" (3/18 JSR at 2), since it is well-established that "the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere." *Pinson v. DOJ*, 245 F. Supp. 3d 225, 244 (D.D.C. 2017) (quoting *Keys v. DHS*, 570 F Supp. 2d 59, 70 (D.D.C. 2008)).[2] The only possible explanations for this discrepancy are that CIA was intentionally attempting to violate FOIA in 2018 or that CIA accidentally omitted NARA from the 2018 status report and is intentionally attempting to mislead this Court in 2024. Neither possibility involves any responsibility of MuckRock's to guess that CIA was omitting key facts and "make any inquiries to the CIA regarding the identities of the agencies or the status of the referrals." (CIA's Opp'n at 10.)

As an aside, CIA also points to a statement made in a 15 June 2017 letter that "a number of documents originating with other government entities were referred for their review and direct response to you." (*Id.* at 4.) This is another transparent attempt to mislead the Court, since, as the undersigned informed CIA's counsel on 24 February, CIA's very next release letter stated that "The other government agencies responded back to us regarding their equities vice responding directly to you." (Letter from Fong to McClanahan of 10/10/17, attached as Ex. F.) Once again, CIA has only told the Court *part* of the story, and yet, even though the undersigned provided this

---

[2] This clearly established responsibility is what makes CIA's claim that it does not track referrals legally questionable, even if true, since such a policy would lie in direct contravention of its legal duty to defend the other agencies' responses if the referral occurs during litigation, as it did here.

information to CIA's counsel in February, it still made the argument and omitted the part that undermined its claim in April.

CIA's recalcitrance in this matter is additionally problematic in light of the fact that this entire problem stems from its policy of categorically refusing to identify the agencies to which it refers responsive records. The Department of Justice Office of Information Policy, which sets governmentwide FOIA policy, advises agencies that they should "[a]dvise the FOIA requester that a referral of records has been made, *provide the name of the agency to which the referral was directed, and include that agency's FOIA contact information.*" DOJ OIP, *Referrals, Consultations, and Coordination: Procedures for Processing Records When Another Agency or Entity Has an Interest in Them* (July 26, 2021), *at* https://www.justice.gov/oip/blog/referrals-consultations-and-coordination-procedures-processing-records-when-another-agency (last accessed Apr. 17, 2024) (emphasis added). While this is admittedly guidance that an agency is not required to follow, it is inappropriate for CIA to now attempt to blame a requester for problems it created by refusing to follow the well-reasoned guidance of the Executive Branch's recognized definitive FOIA authority.

CIA's last episode of misconduct involves its attempt to claim that "[t]he parties then agreed [in 2019] to a schedule for summary judgment with respect to Count 3" (CIA's Opp'n at 5), which critically misrepresents that MuckRock knowingly limited the scope of that forthcoming motion for summary judgment to Count 3. In fact, the parties agreed that CIA would file its motion for summary judgment—*without limitations*—in October 2019, and that *CIA* made the decision—either inadvertently or intentionally—to limit the scope of the motion to Count 3.

CIA's last attempt in this respect is to argue that MuckRock was at fault for not attempting to take further action on Count One after CIA's final response in 2017. (*See* CIA's Opp'n at 6, 11 ("To the extent MuckRock was interested in pursuing Count 1, it had ample opportunity between 2018 and its filing of the dismissal to do so.").) However, CIA neglects to specify exactly what actions MuckRock was supposed to have taken in this period, since it had attempted to obtain a *Vaughn* index in 2018, been rebuffed by CIA, and the parties had agreed that the matter would be resolved when "the agency files its motion for summary judgment." (*Id.* at 5.) It is disingenuous for CIA to now argue that, after the parties agreed to brief Count One at the end of the case, MuckRock still bore a responsibility to "mention it" in the intervening period, and in fact waived the count by not doing so. (*Id.* at 6.) MuckRock bore no such responsibility and was entitled to trust CIA's representation that it would attempt to meet its burden of proof on *all* remaining issues in controversy when it filed its next motion for summary judgment, and while the undersigned does regret the fact that he neglected to recognize in 2020 that CIA had not done so, that does not mean that CIA can claim that *its oversight* was *his fault*.

CIA makes one more argument which warrants a response, this time attempting to argue that MuckRock was required to do more than it did in September 2020 when the undersigned first realized the oversight. CIA faults MuckRock for not filing a motion to reopen the case after filing the Errata in 2020, but points to no requirement that it *needed to*. MuckRock filed an Errata identifying a mistake in its notice of voluntary dismissal. The case had not yet been formally dismissed yet, but had simply been "closed" by the clerk's office through an unclear process.[3] MuckRock *could* have filed a motion for a status conference, but it was not *required* to.

---

[3] The undersigned has attempted in the past few months to ascertain exactly how the case was closed and what happened after the filing of the Errata, but neither the clerk's office nor the courtroom deputy supervisor have been able to clarify the matter of how the case was closed without the required court order.

According to the rules, MuckRock filed the necessary documents and informed the Court that the notice of voluntary dismissal was incorrect, and the court's unexplained failure to resolve the issue cannot be imputed to MuckRock or the undersigned. MuckRock does not attempt to assign blame for this issue to any particular office of the court, because it recognizes that 2020 was a challenging time for all parties involved, but it does maintain that it is similarly inappropriate to lay the blame at *its* feet because it did not take more aggressive steps that it was simply not required to take. As MuckRock stated in its Motion, it is unclear if this case can even properly be considered closed in the first place, given all the irregularities that transpired in 2020.

In conclusion, MuckRock has given the Court ample reason to treat this case as open—either because it was never properly closed or because it should be properly reopened—and the Court should accordingly clarify the open status of the case and order the parties to propose a briefing schedule to address the issues remaining in controversy regarding Count One.

Date:   April 17, 2024

Respectfully submitted,

 /s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org

*Counsel for Plaintiff*